## MINNIE MILLS DICK ET AL. *vs.* BIDDLE BROTHERS.

*Secondary Evidence of Written Instrument—Admissibility of Entries in Account Books—Action Against Husband and Wife on Contract Made by the Latter—Part Payment by Husband—No Recovery on Quantum Meruit When Price Fixed by Contract—Verdict in Excess of Amount Stated in Bill of Particulars—Action on Common Counts When Special Contract Completed.*

In an action to recover for work done by the plaintiff in pursuance of a written specification or proposal made by him, when the defendant has failed to produce the original proposal at the trial in the pursuance of a notice so to do, its contents may be proved by the testimony of the plaintiff who made it out and who testifies that the defendant acknowledged receipt of a copy over the telephone and accepted the proposal.

Entries in an account book, made by the book-keeper of the witness, the plaintiff, as copies of original entries made by the witness in another book, offered, not to refresh the recollection of the witness, but as independent evidence of the charges, are not admissible for that purpose, although the witness testifies that he had compared the entries with his original book and knew of his own knowledge that they were correct.

When a married woman contracts with the plaintiff for work to be done in her house and afterwards accepts the same, the mere fact that a

·check drawn by the woman's husband was received by the plaintiff and credited on account, imposes no liability on the husband, who had made no communication with the plaintiff concerning the work. Consequently, it is error to authorize the jury to render a verdict against both husband and wife.

When the contract provides for the performance of certain work by the plaintiff for a designated price and the plaintiff's bill of particulars sets forth that work and also certain extra work ordered by the defendant, in an action to recover for the same it is error to instruct the jury that if they find for the plaintiff, their verdict must be for such sum as the evidence satisfies them the plaintiff is entitled to for the services rendered and materials furnished; and if there be a jndgment on verdict for a greater sum than that claimed in the bill of particulars, it is reversible error.

When there is a special contract to perform designated work for the defendant for a fixed price, and the evidence shows that the defendant also ordered extra work to be done, the plaintiff is entitled to recover for his whole claim under the common counts.

*Decided March 1st, 1907.*

Appeal from the Circuit Court for Wicomico County (HOLLAND and LLOYD, JJ.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*F. Leonard Wailes* (with whom were *Ellegood & Freeny* on the brief), for the appellants.

*John H. Handy* and *Elmer H. Walton,* for the appellees.

. BURKE, J., delivered the opinion of the Court.

The appellees brought suit against the appellants in the Circuit Court for Wicomico County, and recovered a judgment for the sum of three hundred and thirty-six dollars and fifty-six cents, from which this appeal was taken. The declaration contained the common counts, and three special counts. Two witnesses were produced on behalf of the plaintiff, but no testimony was offered by the defendants. During the course of the trial five exceptions were taken by the defend-

ants, four to the ruling of the Court on the admissibility of evidence, and one to the action of the Court upon the prayers submitted by the respective parties.

The following Bill of Particulars was filed with the *narr.*:

BILL OF PARTICULARS.

Salisbury, Md., May 11th, 1905.
Minnie Mills Dick and Frank M. Dick, Her Husband,
To Biddle Brothers, Dr.
May 3—Oct. 7, 1904.

| | | |
|---|---:|---:|
| To Plumbing as per contract........ ................................... | $554 00 | |
| " Gas piping house as per contract................................... | 122 00 | |
| " Radiator in bath room as per contract................................ | 26 75 | |
| " Extra for connecting rain spout to sewer. | | |
| " 15 ft. of 4 in. soil pipe......... ......... ......... .......... .... ....$ 3 60 | | |
| ". 2 ft. 4 in. bends....... ............... ............................ 60 | | |
| " 15 lbs. of lead........................................... 1 05 | | |
| " 4 hours time plumber and helper, 75c........................ 3 00 | | 8 25 |

May 18—Oct. 7.
To extra for gas piping tenant house

| | | |
|---|---:|---:|
| To 22 ft. of ¾ in. black pipe, 8c................................$ 1 76 | | |
| " 32 ft. of ½ in. black pipe, 7c................................ 2 24 | | |
| " 58 ft. of ⅜ in. black pipe, 6c.. ...... ..................... 3 48 | | |
| " 12 lbs. fittings, 24c.............................................. 2 88 | | |
| " 20 gas pipe hooks.. ......... ............................... .. 40 | | |
| " 19 hours time plumber and helper, 75c...................... 14 25 | | 25 01 |

Sept. 29—Oct. 7.
To extra for running gas pipe to tenant and to barn
and fitting gas lights in barn.

| | | |
|---|---:|---:|
| To 1 ¾ in. galv. running screws...... .........................$ 26 | | |
| " 6 lbs. of galv. gas fittings, 24c.................................. 1 44 | | |
| " 162 ft. of lin. black pipe, 10c.. ................................ 16 20 | | |
| " 167 ft. of ¾ black pipe, 8c....................................... 13 36 | | |
| " 7 ft. of ½ black pipe, 7c........................................ 49 | | |
| " 25 ft. of ⅜ black pipe, 6c....................................... 1 50 | | 33 25 |
| | | $769 26 |

| | | |
|---|---:|---:|
| Carried over........ .................. ............. ................. | | $769 25 |
| Sept. 29. To one day plumber and helper......................$ 6 00 | | |
| Sept. 29. " 5 hours time plumber, 50c........................ 2 50 | | |
| " 29. " 1 day labor................ ....... ......... ........ 1 50 | | |
| " 30. " 1 day plumber and helper....................... 6 00 | | |
| " 30. " 1 day plumber.. ....... .. ................................. 4 00 | | |
| " 30. " 1 day labor............................................ 1 50 | | 21 50 |

| | | |
|---|---:|---:|
| Oct. 7. " 12 hours time plumber and helper....... .....$ 9 00 | | |
| " 7. " 9 hours time plumber, 50c...................... 4 50 | | |

Sept. 30.   " Car fares from Salisbury to Hebron and
                    return, 4 men, 40 cents......................... 1 60
Oct.    7.   " Car fare from Salisbury to Hebron and
                    return, 3 men. 40 cents........................... 1 20      16 30

May 18 and 19.
    To water pipe to poultry yard.
88 ft. of ¾ in. galv. iron pipe.......................................$ 8 80
1 ¾x¾x½ in. galv. tee................................................ 08
4 ¾ in. galv. ells, .08............................................... 32
1 ¾ m.x½ in. galv. tee.............................................. 14
2 ¾ in. galv. nipples............................................... 16
1 ¾ in. stop and waste............................................. 80
1 ¾ in. hose bibb.................................................. 85
14 hours time plumber and helper..................... 10 50
2 days time labor................................................... 3 00      24 65

May 17.
    For putting spigot on porch at tenant house.
10 ft. ½ in. galv. pipe........................................ $    80
1 ¾ in. galv. tee..................................................... 08
1 ½ in.  "    ell ..................................................... 06
1 ½ in. hose bibb.......................... ....................... 80
2 hours time plumber and helper................................. 1 50
Oct. 8.
To one set gas pipe testing tools.. .......... ......... 10 00      13 24
                                                                                    ———
                                                                                  $844 95

Oct. 4, 1904.   On this date by Mrs. Dicks request, I
                    made a trip to your place to repair leak
                    in plumbing.   On arriving there I found
                    no leak.   Some one I presume had upset
                    some water on the bath room floor; this
                    water followed piping down to ceiling.
                    This trip cost us,
Horse hire.............................................................$  1 50
5 hours time, 50 ct.................................................. 2 50    $  4 00

Oct. 6.   On trip to your farm as per request of Mrs.
                    Dick in interest of gas fixtures,
Horse hire.................................. ...............$   1 50   $  1 50
                                                                                    ———
                                                                                  $850 45
                    Credits.
June 24th, 1904.   By order given Dorman & Smyth......$150 00
June 30th, 1904.   By check from Mr. F. M. Dick.......... 400 00      550 00
                                                                                    ———
Balance........................................................................  $300 45

The case was tried on the 24th of September, 1906, and it

appears that on the 22nd day of March, 1906, the plaintiffs served upon the defendants' attorneys a notice to produce at the trial of the case the proposal submitted by the plaintiffs, either directly or indirectly, to the defendants or either of them, of the work to be done by the plaintiffs for the defendants, as set forth in the bill of particulars, and particularly the typewritten proposal, estimate, specification or specifications submitted by the plaintiffs to the defendants, or either of them directly or indirectly, for the work mentioned in the first three items of the bill of particulars, and set forth in the *narr.* filed herein. The proposals or specifications called for were not produced in response to the notice. At the trial the Court permitted Arthur Biddle to testify:

1st. That he and Harry Biddle were partners, trading as Biddle Brothers, and were engaged in the business of plumbing, and offered to show that Minnie Mills Dick, one of the defendants, sent for him and asked him to furnish an estimate of cost for doing certain plumbing work at her farm in Wicomico County, and that after calling on her he submitted a proposal to her for the work which she desired to have done. The written proposal was produced and offered in evidence. It was addressed to Mrs. Dick, and showed an offer on the part of the plaintiff to do certain specified work at her residence. The plumbing work, the nature and character of which were specifically described in the proposal was to be completed for six hundred and forty-six dollars; a radiator in the bath-room and the necessary work in connection therewith was to cost twenty-six dollars and seventy-five cents; a gas machine and a gas pipe house, with about fifty lights, was to cost one hundred and twenty-two dollars. The proposal provided for two bath rooms.

The witness testified that after Mrs. Dick had examined the proposal, she wanted one of the bath rooms left out, but no other changes were to be made; that he made out a new proposal, and took the same to Samuel S. Smyth for the purpose of having it sent to Mrs. Dick; that latter on the same day on which he had delivered the new proposal to Smyth, the witness

called Mrs. Dick over the phone, and testified that he recognized her voice; that he asked her if she had received the new proposal, and that she said she had received the five hundred and fifty-four dollar proposal, and told him to go on with the work; that the new proposal was for the contract price o five hundred and fifty-four dollars and that the original proposal (which had been offered in evidence and which witness stated had been submitted to Mrs. Dick) was precisely the same as the new proposal which he said Mrs. Dick had accepted over the phone, except the item of one bath room which had been eliminated, and which had thereby reduced the original contract price from six hundred and forty-six dollars to five hundred and fifty-four dollars. The first specia count is based upon this contract. The defendants objected to this evidence, and their objection being overruled, they excepted, and this constituted their first bill of exceptions.

2nd. The witness then testified on cross-examination that he did not see the copy of the new proposal as made out and given to Smyth to be sent to Mrs. Dick either before or after it was sent to her; that Mrs. Dick said she had received the new proposal, and told him to go ahead with the work. The defendants "moved the Court to rule and exclude from the jury the proposal as offered in evidence by the plaintiffs." This motion the Court denied, and the defendants excepted and this constitutes the second bill of exceptions:

. The first and second exceptions may be considered together, as they involve substantially the same question. The evidence tended to show that the witness had himself made out the new proposal, and that it had been received by Mrs. Dick who had directed him to proceed with the work; and she having declined to produce it in response to the written notice to which we have referred, the legal result of its non-production was to permit the plaintiffs to offer secondary evidence of its contents. This they did in the way we have mentioned. As the method adopted to prove the contents of the proposal was not open to valid objections, and as the evidence offered of its contents was very satisfactory, the Court was right in its ruling on both objections to the testimony.

3rd. The witness was then asked if he had done any other work "for the defendant, Minnie Mills Dick," and he said he had, and that the work done was set out in the bill of particulars; he was then asked to refer to his books, and tell the respective items on which "Minnie Mills Dick was indebted to the plaintiffs." The witness stated that he did not make the entries in said book, was not present when they were made, but said they were made by his book-keeper from the original entries in another book kept by the witness, although said witness testified to all items in said bill of particulars, and said he was present when the work was performed, and that said entries had been made in said books by the book-keeper from the original entries made by him, and the witness had himself compared the entries and knew they were correct, and had performed a part of all the work himself, and knew that the entries were correct, and knew that the work as charged was correct apart from said entries. To the offer of the entries in said book in evidence the defendents objected and their objection being overruled, and the Court having permitted the entries in the book to be read in evidence, the defendants excepted and this constitutes the third bill of exceptions.

4th. The witness then testified that as to the number of hours of work his employees had performed, as charged in said books and set out in the aforesaid bill of particulars, that he had employed the men and knew the time they had been employed, that he had personal knowledge of all the work and knew the time was correct, though the said entries were not made by him, and he admitted he had no knowledge of the correctness of the exact number of hours of work of some of the employees and was not present, though he did know as superintendent of the work and the time required for the work, that the time charged is correct as told and given in by said employees. To this testimony the defendants objected and the Court over-ruled their objection, and this constitutes their fourth exception.

The third and fourth exceptions may also be considered

together. They relate to the introduction in evidence of the entries contained in a book produced by Arthur Biddle, one of the plaintiffs. The book purported to be a copy of certain original entries made by the witness, and was used by him nòt for the purpose of aiding his memory, but as substantive and independent evidence of charges contained in the bill of particulars. The circumstances under which the entries in such a book may be used, and the purposes for which they may be used, have been stated in a number of cases in this Court, among which are the cases of *Bullock* v. *Hunter*, 44 Md. 416; *Owens v. The State*, 67 Md. 307; and *Stallings v. Gottschalk*, 77 Md. 429. The facts embraced in these exceptions, as hereinbefore set out, do not bring the offer within the authority of those cases so as to make the entries evidence in such a way as was done in this case.

5th. The witness further testified that Minnie Mills Dick accepted the work, and that there was a balance of three hundred dollars and forty-five cents still owing, and on cross-examination he testified that he never had any conversation with the defendant, Frank M. Dick, the husband of Minnie Mills Dick, in regard to said contract, or the work done or the materials furnished either before or after the said contract and the doing of said work, but that the payment of four hundred dollars on the 30th day of June, 1904, had been made by the said Frank M. Dick. The record then states that the plaintiffs called a competent witness who testified that he did a part of the work testified to by Mr. Biddle, and after the same was completed he went over the premises with Mrs. Dick, and that she made no objections to the work except some trifling defect which he remedied. At the close of the testimony, the plaintiffs offered one prayer, which was granted, and the defendants submitted nine prayers, all of which were by the Court refused. To this action of the Court the defendants excepted, and this constitutes the fifth bill of exceptions.

By the plaintiffs' prayer the jury were told that if they found from the evidence that the plaintiffs were employed by defendants, or either of them to do the work and furnish the

materials mentioned in the *narr.* and accompanying bill of
particulars, and did perform said work and furnish said mate-
rials, and further find the same, after being so done and fur-
nished, were accepted by the defendants, then their verdict
must be for the plaintiffs, and if they find that after the work was
all finished and completed and materials furnished, the defend-
ant, Minnie Mills Dick, went over the work with an employee
of the plaintiff, and examined the same and made no objection
to the same, except a trifling defect which was remedied on the
spot by said employee, and occupied the same without objection
to the said work and materials, and that they may consider that
fact with the other evidence in the case in determining an accept-
ance on the part of said defendants, and if they find for the
plaintiffs their verdict must be for such sum as the evidence
will satsfy them the plaintiffs are entitled for the services ren-
dered and materials furnished, together with interest, if any,
as the jury may believe the plaintiffs are entitled to.

The defendants' first, second and third prayers asserted that
there was no evidence in the case legally sufficient to entitle
the plaintiffs to recover against *both defendants* under either of
the special counts of the declaration; and the fourth prayer
asserted that there was no evidence legally sufficient, under
the pleadings and evidence, to entitle the plaintiffs to recover
against Frank M. Dick; and the fifth prayer that there was no
legally sufficient evidence to entitle the plaintiffs to recover
under the common counts. The defendants' sixth, seventh,
eighth and ninth prayers asked the Court to instruct jury that
there was no evidence legally sufficient to entitle the plaintiffs
to recover for the items of extra work specifically mentioned
in each of those prayers.

The plaintiffs prayer was bad, and should have been re-
fused. It failed to limit the recovery for the work done un-
der the special contract to the contract price as set forth in
the eighth, ninth and tenth counts of the declaration, and
since the jury found for a greater sum than that claimed in
the bill of particulars, the judgment for this reason alone must
be reversed. A like prayer, under a very similar state of facts

as that contained in this record, was declared wrong in the case of *Walsh* v. *Jenvey*, 85 Md. 240.

We do not find in this record any evidence whatever upon which Frank M. Dick can be held liable upon the causes of action sued on.   According to the plaintiff's evidence the property was owned by Mrs. Dick; the proposal for the work was made to Mrs. Dick; the contract was made with her; she alone accepted it, and no communication of any kind passed between the plaintiffs and Frank M. Dick either before or after the making of the contract with Mrs. Dick, or during the course of the work, and no charge was made against him by the plaintiffs, and no account was ever rendered to him. There is absolutely nothing in the case to fix a liability upon him.   The mere fact that it appears from the bill of particulars, and by the testimony of Arthur Biddle, that on June thirtieth, nineteen hundred and four, a check of F. M. Dick for four hundred dollars, was received by the plaintiffs, and credited upon the account, is wholly insufficient in an action of this nature to impose a liability upon him.   In *Hand* v. *The Evans Marble Co.*, 88 Md. 226, JUDGE PEARCE announced the principle, which we think controls this branch of the case: "The general rule has long been established that 'one who is not a party to a contract cannot be included in the rights and liabilities which the contract creates, so as to enable him to sue, or be sued thereon.'   A man cannot incur liabilities and, again, a man cannot acquire rights from a contract to which he is not a party."   We, therefore, think that upon the evidence contained in this record, the defendants' first, second, third and fourth prayers, which asserted that there was no legally sufficient evidence to hold Frank M. Dick liable for the bill sued on, should have been granted.

There was no error in refusing the other prayers of the defendants, as there was evidence in the case tending to show Mrs. Dick's liability for the extra work charged, and for which the plaintiffs could have recovered under the common counts. For the errors committed by the Court, in its rulings upon

the third, fourth and fifth exceptions, the judgment must be reversed.

*Judgment reversed with costs, and new trial awarded.*