## SAMUEL De WOLFF vs. THE ADAMS EXPRESS COMPANY.

*Carriers—Express Company's Bill of Lading Limiting its Liability to Value of Property as Declared—Acceptance of Bill of Lading by Shipper.*

A common carrier may by contract limit the amount of its liability for the loss of goods entrusted to it for carriage. Such limitation does not exempt the carrier from liability for negligence, but gives effect to the agreement of the parties that the value of the property is that stated in the contract, upon which the charges of the carrier are based.

A bill of lading delivered by the carrier and accepted by the shipper, although without his signature, is presumed to have been read and acquiesced in by the shipper, and to constitute the contract of carriage, in the absence of fraud, imposition or mistake.

Plaintiff's agent delivered to the defendant Express Company in New York a package for transportation to plaintiff in Baltimore. The defendant executed and delivered a bill of lading stating that the company's charges were based upon the value of the property; that the value of the package was asked and not given; that the rate charged for carrying the property was based upon a valuation not exceeding $50, unless a greater value is declared, and that the shipper agreed that the company should not be liable for more than $50 if no value was stated. The package was not delivered and in an action against the company, the plaintiff proved that it contained two diamond rings valued at $400. *Held*, that the bill of lading constituted a valid contract between the parties, and that the plaintiff is not entitled to recover more than $50, although the goods may have been lost by reason of the defendant's negligence.

*Decided November 13th, 1907.*

Appeal from the Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before BOYD, SCHMUCKER, BURKE and ROGERS, JJ.

*Thos. C. Weeks* and *Eli Frank*, for the appellant.

*William S. Thomas* (with whom were *Williams & Williams* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant in this case sued the appellee to recover the value of two diamond rings received by it in New York for transportation to Baltimore but lost in transit and never delivered to the consignee. The declaration charged the defendant with the loss of the rings through its own negligence or that of its servants or agents but contained no allegations of fraud or illegal conversion.

The Express Company in addition to the general issue pleas set up by special pleas that it had undertaken to carry the rings only under the special contract, to be hereafter mentioned, by which the value of the rings had been fixed at $50, and that before the bringing of the suit it had tendered the plaintiff $50 in liquidation of its liability under the contract but he had refused to accept it.

The case was tried before the Court without a jury and at the close of the evidence the Court rejected the plaintiff's prayers and granted one offered by the defendant declaring as matter of law that "under the pleadings and evidence in the case the limit of the plaintiff's recovery against the defendant is fifty dollars." A verdict for that sum was thereupon rendered against the defendant and judgment entered thereon and the plaintiff appealed. One of the plaintiff's rejected prayers asserted the proposition that the receipt given by the company for the package containing the rings was not efficient in law to release it in whole or in part from its common law liability as a common carrier for its own negligence or that of its agents or servants, even though the Court sitting as a jury found that the receipt was accepted by the plaintiff's agent in New York at the time of the shipment of the goods. The other rejected prayer of the plaintiff fixed the measure of damages, in the event of a verdict in his favor, at the full value of the rings.

The record contains but one bill of exceptions, and that relates to the Court's ruling on the prayers.

The following facts appear from an agreed statement of facts found in the record. On or about December 28th, 1905, Henry McAleenan, a pawnbroker residing in New York City,

shipped from that city to Baltimore by the Adams Express Company one small package consigned to the appellant. At the time of the shipment the shipper did not disclose to the company the contents or value of the package but when he was asked by the company's agent what value he would place on the shipment he stated no value, whereupon the agent delivered to him a receipt or bill of lading on which was stamped "*Value asked and not given,*" and the shipment was accepted for transportation by the company and the bill of lading was delivered to the shipper and accepted by him. The bill of lading is as follows:

"The Company's charge is based upon the value of the property, which must be declared by the shipper.

ADAMS EXPRESS COMPANY.

(Non-Negotiable Bill of Lading.)

11 West 34th Street, New York,

Dec. 28, 1905.

Received from McAleenan
One Pa       Valued at $  . . . . .  Value Asked & Not Given.
Marked S. DeWolff
        Baltimore, Md.

Which the company agrees to carry upon the following terms and conditions, to which the shipper agrees, and as evidence thereof, accepts this bill of lading.

1. The consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein.

Charges     Coll         For the Company, Moran.
Liability limited to $50 unless a greater value is declared."

It was also agreed that the plaintiff could produce as a witness the shipper McAleenan who would testify that the package when shipped contained two diamond rings valued at $400.

There is evidence in the record tending to prove that, according to the method pursued by the Express Company in fixing charges for transportation and handling shipments, if

the true nature and value of the contents of the package containing the rings had been disclosed by the shipper at the time of shipment, the express charges would have been double what they were and the package would, immediately upon its receipt, have been taken to the money department of the company's New York office and handled on a jewelry way bill, and placed in a sealed jewelry trunk and given in care of a special messenger in its transit to Baltimore and there delivered in what is known as a money delivery wagon in an iron safe in charge of a guard in addition to the driver; and other special precautions involving greater expense would have been taken for its protection while in the custody of the company. By reason of the failure of the shipper to give, in response to the company's request, proper information as to the value of the package it was handled while in the company's charge as a small package of ordinary merchandise and came in due course of transit to the petty parcel room of the company in Baltimore and there disappeared and although diligent search for it was made it has never been found.

Under these circumstances no error is to be found in the rulings of the learned Judge below on the law of the case. It has several times been held by this Court that a common carrier may lawfully restrict the amount of its common law liability by a special contract just and reasonable in its nature. In *Brehme* v. *Adams Express Co.*, 25 Md. 328, the present appellee was sued for the value of a package which it undertook, by a contract, similar to the one now before us, to transport from New York to Baltimore but failed to deliver at the latter place.   In that case, the package when delivered by the shipper to the carrier was in such form that its contents, consisting of light but costly goods valued at $675, were not visible and were not disclosed to the Express Company nor was any statement of their value given.   The receipt or bill of lading given for the package by the Express Company contained a provision that in no event "shall the holder hereof demand beyond the sum of fifty dollars at which the article hereby forwarded is hereby valued unless otherwise herein expressed or

unless specially insured (by the company) and so specified in this receipt."

In that case the Court below at the instance of the defendant charged the jury that the receipt constituted a special contract between the parties for the carriage of the package binding. upon both and that the plaintiff could only recover the sum, at which the package was valued in the receipt, with interest thereon.    This Court held that there was no error in the ruling saying in the opinion.    "The right of carriers to restrict their common law liability by express contract is now too well settled to be any longer questioned.    It is established by numerous decisions both in England and in this country and rests upon the plainest and most obvious grounds of reason and justice.    In *Door* v. *Steam Navigation Co.*, 1 Kernan 485, JUDGE PARKER in a very able and satisfactory opinion, after citing numerous authorities has laid down very clearly the reasons in support of this position and without repeating what has been so well said in that case, we think, if the question were a new one, it might safely rest upon the reasoning of JUDGE PARKER in that case.  *  *  The receipt executed by the appellee and accepted by the appellant constituted the contract between the parties and both upon reason and authority they are bound by its terms."    The right of a common carrier to restrict his ordinary responsibility by special contract was again recognized by this Court in *B. & O. R. R.* v. *Brady*, 32 Md. 333, and *McCoy* v. *Erie & Western Transp. Co.*, 47 Md. 509; and in the *Casualty Ins. Co.*'s *case*, 82 Md. 576, we said that in *Brehme* v. *Adams Ex. Co.*, *supra*, "the right was distinctly recognized and is undoubtedly now the law."

It is to be observed that the special provisions of the bill of lading in the present case do not attempt to change the nature of the carriers liability.    They only fix a pecuniary limit to it by agreeing upon the value of the property whose loss or injury might result in a claim against the carrier for damages. Up to the value of the property thus fixed by the parties themselves the carrier remains liable for negligence as fully as ever. It furthermore appears upon the face of the bill of lading that

the company's charge for transporting the package was to be based upon the value of the property contained in it, which the shipper was permitted by the terms of the bill to declare, and that the valuation of $50 was adopted, for the purposes of the contract made by the bill, simply because the shipper, who was the only one of the parties to the transaction who knew the contents of the package, failed to disclose their nature or more accurately fix their value when requested to do so. Such an agreement is neither unjust nor unreasonable.

*Hart* v. *Penna. R. R. Co.*, 112 U. S. 331, is the leading Federal case upon this subject and it has frequently been relied on by the Supreme Court of the United States in more recent cases. That suit was brought to recover damages for the loss of five horses injured in transit under a bill of lading which stated that the transportation was undertaken "on the condition that the carrier assumes a liability on stock to the extent of the following agreed valuation; if horses or mules not exceeding $200 each * * * if a chartered car on the stock and contents in the same $1,200 for the car load." The plaintiff claimed $19,800, as the value of the horses but the Court sustained the defendant's objection to evidence of any greater value than $1,200 and the verdict was for that amount. The plaintiff contended that the carrier could not lawfully fix an arbitrary limit to its liability for damages for its own negligence. The Supreme Court in their opinion say: "It is not asserted that the plaintiff named any value greater or less, otherwise than as he assented to the value named in the bill of lading by signing it. The presumption is conclusive that if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged. The valuation named was the agreed valuation, the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was fixed on condition that such was the valuation and that the liability should go to that extent and no further."

"The limitation as to the value has no tendency to exempt from liability for negligence. It does not induce want of care.

It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. * * * There is no violation of public policy.. On the contrary, it would be unjust and unreasonable and would be repugnant to the soundest principle of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss." The opinion concludes as follows:

"The distinct ground of our decision in the case at bar is, that where a contract of the kind signed by the shipper is fairly made, agreeing on a valuation of the property carried, with the rate of freight based on·the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be unheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.''

In Hart's case the shipper signed the bill of lading, but in Brehme's case there was no other evidence of the shipper's assent to the terms of the bill of lading than that arising from his acceptance of it and upon that ground it was strenuously insisted upon the plaintiff's brief in this Court that the alleged special contract had not been proven, but our predecessors held that "the receipt executed by the appellee and accepted by the appellant (the shipper) constituted the contract between the parties" and that they were bound by its terms.

A bill of lading delivered by the carrier to the shipper and accepted by him although without his signature is presumed to have been read and acquiesced in by the shipper and to constitute the contract of carriage in the absence of fraud, imposition or mistake. 6 *Cyc.*, 417; 5 *A. & E. Ency. of Law*, 293; *Hutchinson on Carriers* (3 ed.), secs. 408–9; *Carr* v. *Tex. & Pac. R. Co.*, 194 U. S. 431.

It is the duty of the shipper to inform the carrier of the real

value of the goods transported and if he fails to do so when requested or by his silence assents to the value inserted by the carrier in the bill of lading and thereby secures a lower rate of transportation he ought not in our opinion to be permitted when the property has been lost, even through the carrier's negligence, to repudiate the value stated in the bill and recover damages in excess of it.

We are aware of the fact that there is some diversity of opinion among the Courts of the different States upon the right of a common carrier to limit by any form of contract its liability for losses arising from its own neglignece but upon an examination of the cases the decided weight of authority will be found to be in harmony with the views which we have expressed.

The judgment appealed from must be affirmed.

*Judgment affirmed with costs.*