N. Y., P. & N. R. R. vs. PROD. EXCHANGE. 215

Md.]                           Syllabus.

## THE NEW YORK, PHILADELPHIA AND NORFOLK RAILROAD COMPANY, a Corporation,

*vs.*

## . PENINSULA PRODUCE EXCHANGE OF MARY- LAND, a Corporation.

*Common carriers: liable for prompt transmission as well as for safety; special contracts against liability for delivery in time for particular markets; initial carriers. Carmack amendment to Hepburn Act.*

At common law it was as much the duty of a common carrier to transmit and deliver goods with reasonable dispatch, as it was its duty to deliver them safely.                           p. 223

A common carrier may not by contract limit its liability for failure to perform its common law duties with reasonable dispatch.                                                    p. 226

Under the Carmack amendment (34 U. S. Stat. at L. 584, Chap. 3591, U. S. Comp. Stat. Supp. 1911, p. 1288), the initial carrier is chargeable for the neglect of any connecting carrier to forward a shipment within a reasonable time, and there is an express prohibition against any exemption from that obligation.                                                    p. 226

Where perishable fruit is shipped by the regular train, which in due course would have reached its destination in time for the sale of the fruit at the market for which it was intended, in an action against the initial carrier for damages for loss resulting from delay in the delivery of the goods, it was *held,* that (under the Carmack amendment to the Hepburn Act), the burden of proof was upon the defendant to show that due diligence was used in conveying and delivering the goods.          p. 220

And if such carrier failed to show that the goods were forwarded with reasonable dispatch, no advantage can be taken, as a defense, of a stipulation in the bill of lading, that the carrier was not bound to convey or deliver to a particular market.

p. 227

If a shipper obtains a lower rate from a carrier under an agreed valuation of the property, he is estopped from enforcing a claim for loss upon any different basis of valuation.     p. 228

Where a bill of lading restricts liability for loss, to the basis of the value of the property (including freight, if paid,) at the time and place of shipment, etc., the carrier can not be charged for loss, for delay in transmission or delivery, for more than would result from an absolute failure to deliver.          p. 228

The ordinary measure of damages for recovery against a carrier for delay in transmitting goods shipped would be the decline in the market value between the time when they could have been sold if transported with dispatch and what they did actually sell for.                                    p. 229

*Decided January 13th, 1914.*

Appeal from the Circuit Court for Somerset County (JONES, J.).

The facts are stated in the opinion of the Court.

The following are the prayers that were offered at the trial of the case, and the action of the Court below upon each:

*Plaintiff's First Prayer.*—The plaintiff prays the Court to instruct the jury that if they shall believe from the evidence that the Peninsula Produce Exchange delivered to the New York, Philadelphia and Norfolk Railroad Company, at Marion Station, in Somerset County, Maryland, one of its stations in said county, on the 26th day of May, 1910, a carload of strawberries in good condition, said car containing two hundred and forty crates of strawberries of thirty-two quarts each, consigned to H. Warne & Sons, at New York

City, in the State of New York, and that said railroad company received said berries and issued the bill of lading therefor offered in evidence, to be transported over its line and connecting railroad lines, to be delivered to said H. Warne & Sons, then it became the duty of said defendant and all connecting lines to use reasonable care, diligence and exertion in forwarding and transporting and delivering said berries to the said H. Warne & Sons, and if the jury shall believe that said defendant and the connecting railroad lines, or any of them, did not use such care, diligence and exertion in forwarding, transporting and delivering the said berries, and shall further find that by reason of the failure of said New York, Philadelphia and Norfolk Railroad Company and the connecting railroad lines, or any of them, to use such care, diligence and exertion, the said berries arrived at their destination in New York City too late for the market of the day for which they were received and transported by the defendant and the connecting railroad lines, that is to say, too late for the market of the day on which they would have arrived if they had been forwarded and transported with such care, diligence and exertion, and that the plaintiff thereby sustained loss, then their verdict should be for the plaintiff, and they may embrace in their verdict any loss which they find to have been sustained by the plaintiff from the decline in the market value between the time when said berries could have been sold if they had been transported with due dispatch, and the time when they were actually sold. (*Granted.*)

*Plaintiff's Second Prayer.*—If the jury shall find damages for the plaintiff, then they may allow, in their discretion, interest upon such damages. (*Granted.*)

*Defendant's First Prayer.*—The defendant prays the Court to instruct the jury that, under the pleadings and evidence in this case there is no legally sufficient evidence to entitle the plaintiff to recover, and that their verdict must be for the defendant. (*Rejected.*)

*Defendant's Second Prayer.*—The defendant prays the Court to instruct the jury that, under the pleadings and evi-

dence in this case, there is no legally sufficient evidence of any delay occurring on the line of the defendant, and that their verdict must be for the defendant. (*Rejected.*)

*Defendant's Third Prayer.*—If the jury believe from the evidence, that, at the time the shipment of berries mentioned in the declaration in this case was delivered to the defendant, the defendant issued therefor to the plaintiff the bill of lading offered in evidence in this case, and shall further find that the said defendant did not transport and deliver the said berries with reasonable dispatch and shall further find that between the time when said berries should have arrived at their destination, had they been transported with reasonable dispatch, and the time at which they actually did arrive, there was a fall in the market price of said berries, and that by reason of the fall in the market price, the plaintiff suffered loss, then the plaintiffs are entitled to recover nominal damages, only, provided the jury further find that the said shipment of berries was delivered by the defendant or its connecting line to the consignee at destination in sound and marketable condition, and that the said berries suffered no loss, damage or injury before delivery to consignee. (*Rejected.*)

*Defendant's Fourth Prayer.*—The defendant prays the Court to instruct the jury that there is no evidence of any real or actual damage suffered by the plaintiff for which the defendant is liable, under the contract of shipment produced in evidence in the case, and that, even though the jury may find that the berries mentioned in the declaration were not transported and delivered with reasonable dispatch the plaintiff can recover only such trifling and insubstantial damages as the law calls nominal damages. .(*Rejected.*)

*Defendant's Fifth Prayer.*—The defendant prays the Court to instruct the jury that the provisions of the amendment to the Interstate Commerce Act, customarily known as the Carmack Amendment, do not impose on the carrier receiving a shipment in one State for transportation to another State liability for delay which occurred not on its line but on the line of a succeeding carrier into whose possession the

goods may be delivered for movement to or in the direction of destination. (*Rejected.*)

*Defendant's Sixth Prayer.*—The defendant prays the Court to instruct the jury that the uncontradicted evidence in the case shows that the tariffs of the defendant, duly published and on file with the Interstate Commerce Commission, published two rates available in connection with shipments of strawberries, the one available if the shipment was transported under the terms of the bill of lading which terms are set forth in the tariffs; the other a rate of 10 per cent. higher, which was available if the shipment was transported under the common law liability of the carrier; that the shipment which is the subject matter of this section was transported under the former and lower rate and subject to the terms and conditions of the bill of lading as published in the tariff, and a bill of lading containing these terms and conditions was duly issued by the carrier, as required by law, upon receipt of the shipment. In determining what damages, if any, the complainant is entitled to recover in this action, the jury must be guided entirely by the terms and conditions of the bill of lading, since the reasonableness of its terms and conditions may not be questioned in this Court. (*Rejected.*)

*Defendant's Seventh Prayer.*—The defendant prays the Court to instruct the jury that the defendant corporation was not bound, under its contract with the plaintiff, as shown by the bill of lading offered in evidence, to deliver the berries of the plaintiff by any particular train or in time for any particular market, or otherwise than with reasonable dispatch, and if the jury shall find, from the evidence, that the train carrying the berries, referred to in the testimony, arrived at the point of destination with reasonable dispatch, and during the market hours, on the day following the start of said train from Delmar, Delaware, as was usual with such trains, if the jury find that this was usual, then their verdict must be for the defendant, although the jury may find that the berries of the plaintiff would have sold at a higher price if they had been received at an earlier hour of the same market day. (*Rejected.*)

The cause was argued before BOYD, C. J., BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George H. Myers* (with a brief by *Miles & Myers*), for the appellant, The New York, Philadelphia and Norfolk Railroad Company.

*James E. Ellegood* (with whom were *Ellegood, Freeny & Wailes, Melvin & Handy* and *H. Filmore Lankford* on the brief), for the appellee, The Peninsula Produce Exchange of Maryland.

URNER, J., delivered the opinion of the Court.

The appellee delivered to the appellant railroad company a carload of strawberries for transportation from Marion, Maryland, to New York City over the lines of the defendant and connecting carriers. It is alleged in the declaration that the defendant, or companies operating the connecting lines, failed to forward the shipment with reasonable dispatch; that because of this delay the berries did not·reach their destination until after the close of the market for which they were intended and for which they would have arrived in time if due diligence had been observed in their transportation; and that they consequently sustained a large shrinkage and loss in value. The evidence shows that the strawberries were shipped from Marion on the afternoon of Thursday, May 26, 1910, and according to the usual operation of trains engaged in this class of service they should have been delivered in New York City the following night in advance of the early Saturday morning wholesale market, which opened about one o'clock A. M. The shipment reached its destination in good condition, but about six hours later than the customary time of arrival. The wholesale market, for which the berries were shipped and in which they could have been sold to advantage, was then practically at an end and the price had fallen two or three cents per quart below that which might have been received if they had been forwarded with the usual dispatch.

The berries had to be sold at these lower prices because of the delay in their delivery.

The defendant was sued as the initial carrier under the Carmack Amendment of 1906 to the Interstate Commerce Act of 1887, which provides in part: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass; and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed." (34 *Stat. at L.* 584, Ch. 3591; *U. S. Comp. Stat. Supp.* 1911, p. 1288.)

The first question raised by the exceptions in the record is whether the loss of value resulting from delay in transit for which the plaintiff seeks to recover is within the purview of the provisions quoted making the initial carrier liable "for any loss, damage or injury to such property." It is argued on behalf of the defendant that according to the true interpretation of the statute the only cases for which it provides are those in which the commodities themselves become damaged or depleted in the course of the transportation, and that an impairment of value due to delay in delivery, while it occasions a loss to the owner, does not produce such loss, damage or injury to the property as the act contemplates. The theory thus advanced does not appear to give due regard to the purpose of this important legislation and the considerations which prompted its passage.

In *Adams Express Company* v. *Croninger,* 226 U. S. 491, it was said, in the opinion by Mr. JUSTICE LURTON, that prior to the Carmack Amendment "the rule of carriers' liability for an interstate shipment of property, as enforced in both Federal and State Courts, was either that of the general

common law, as declared by this Court and enforced in the Federal Courts throughout the United States (*Hart* v. *Pennsylvania R. Co.,* 112 U. S. 331), or that determined by the supposed public policy of a particular State (*Pennsylvania R. Co.* v. *Hughes,* 191 U. S. 477), or that prescribed by statute law of a particular State (*Chicago, M. & St. P. R. Co.* v. *Solan,* 169 U. S. 133). Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject * * *. That the legislation supersedes all the regulations and policies of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation or contract * * *. The duty to issue a bill of lading, and the liability thereby assumed, are covered in full; and though there is no reference to the effect upon State regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

It was said in *Atlantic C. L. R. Co.* v. *Riverside Mills,* 219 U. S. 203, in reference to the effect of this statute: "The rule is adapted to secure the rights of the shipper by securing unity of transportation with unity of responsibility. The regulation is one which also facilitates the remedy of one who sustains a loss, by localizing the responsible carrier."

In *B. C. & A. R. R. Co.* v. *Sperber,* 117 Md. 602, CHIEF JUDGE BOYD, in referring to some of the reasons for the enactment of this statute, said: "When goods were shipped at a great distance over connecting lines, the rule which requires a shipper sustaining loss to prove on which line it occurred oftentimes resulted in great hardship; and sometimes in a failure to recover, simply because the shipper could not produce evidence to show where the loss occurred. It may in some instances be burdensome to the initial carrier to be held responsible for loss, damage or injury to the property caused by some other carrier, to whom it is delivered or over whose line it passes, but it cannot be denied that the initial carrier

can generally protect itself far better than a shipper can, and it might easily have happened under the former rule that a shipper would be prevented from collecting a just claim by reason of the great expense incurred, and inconvenience sustained in an effort to establish it in a distant Court."

The reason and policy of the act as thus indicated in the decisions cited are sufficiently broad to include the liability here sought to be charged. The remedies of shippers in respect to losses of value from delay in transportation were subject to the same diverities and inconveniences as were those relating to recovery for physical injury to the property accepted for carriage. In each class of cases there was an apparent and equal need of uniformity and simplicity in the regulation and enforcement of the carrier's liability. The duty to deliver without undue delay was just as obligatory at common law as the duty to deliver safely. *Baltimore & Ohio R. R. Co.* v. *Whitehill,* 104 Md. 310. In *P., B. & W. R. Co.* v. *Diffendal,* 109 Md. 509, this Court, speaking through JUDGE WORTHINGTON, said that it became the implied duty of a defendant in accepting a carload of fruit for transportation "to use due diligence to deliver the same at its destination within a reasonable time (*Hutchinson on Carriers,* sec. 652), and for a breach of this duty resulting in a loss to the plaintiff, the defendant was responsible in damages whether the loss was occasioned by a fall in the market price, or by damage to the goods themselves, or by a combination of the two causes." If the appellant's construction of the statute were accepted, it would only partially accomplish the purpose for which it was enacted. While undertaking to deal in a comprehensive way with the general subject of carrier liability under any bill of lading issued by it for an interstate shipment, the law would be confined in its practical operation to a portion only of the cases in which the property may be injuriously affected by the carrier's failure to perform its common law duty. It is not to be supposed that Congress intended the terms of the statute to have such a restricted application. The initial carrier is made liable *"for any loss,*

*damage or injury to such property caused by it"* or by any connecting carrier. The primary object of the act was to provide a convenient remedy for any loss to the commodity occasioned by any carrier in the course of the transportation, and not to define particular classes of damages to which recovery should be limited. It is with the right of the person sustaining the loss and not with any specific causes of injury to the property that the statute is concerned. If the goods received for shipment in fact suffer loss, damage or injury in course of transit, through any failure of carrier duty, the statutory liability attaches without regard to the precise nature of the effect thus produced. The act does not suggest any discrimination in favor of losses due to mere physical deterioration of the commodity transported. It permits recovery for any loss to the property caused by the carrier, and it affords no support for a construction which would confine its remedy to losses of quantity or quality as distinguished from losses of value.

In the opinion, to which we have already referred, in the case of *Adams Express Co.* v. *Croninger* it was said that "the constitutional power of Congress to regulate commerce among the States and with foreign nations comprehends power to regulate contracts between the shipper and the carrier of an interstate shipment by defining the liability of the carrier for loss, delay, injury or damage to such property." It was suggested in the argument of the case at bar that the use of the word "delay" in the sentence just quoted indicates that the Supreme Court regarded that cause of loss as a separate and distinct ground of liability, and that as it is not specifically mentioned in the Carmack Amendment it should be held to be excluded from the remedy therein provided. The quotations previously made from the opinion in the case cited show that the Supreme Court was proceeding upon the theory that the act under consideration was intended to apply generally to the subject of carrier liability, and the use of the term "delay" in that connection is a clear indication that the Court understood this legislation to cover cases in which loss to

property received for carriage resulted from that cause. There are many instances in which physical deterioration of goods, as well as loss of value, results from delay in transportation, and it was evidently not the intention of Congress to place such cases beyond the scope and effect of the statute.

The case of the *Gulf, C. and S. Ry. Co.* v. *Nelson* (Tex.), 139 S. W. 81, was cited in support of the contrary view. In that case a shipment of machinery and equipment intended for construction work was delayed in transit and was delivered too late to be used profitably for that purpose. The carriers engaged in the transportation were sued jointly upon their common law liability for the loss sustained by the plaintiff in consequence of the delay. They made the contention that the only remedy available to the plaintiff was the one provided by the Carmack Amendment to the Interstate Commerce Act. In disposing of this objection the Court said that the act did not in its opinion "apply where the damage claimed is not in reference to the property itself which is the subject of the transportation." As the property shipped in that case was not affected in its condition or value, it was held that the suit was properly based on the common law right of recovery rather than upon the Federal Statute. This decision is not at all at variance with our conclusion in the present case.

The bill of lading issued to the plaintiff for the carload of strawberries contained the stipulation "that no carrier is bound to transport such property by any particular train or vessel, or in time for any particular market, or otherwise than with reasonable dispatch, unless by specific agreement endorsed hereon." Upon the theory that the suit is for a failure to convey and deliver the berries in time for the market of the Saturday following their receipt by the initial carrier, it is urged that the provision quoted from the bill of lading constitutes an effectual defense. The common law duty of the carrier was to transport with reasonable dispatch. The defendant could not limit by contract the liability for its failure to perform this duty, and no such limitation has

in fact been attempted by the present bill of lading. Under the Carmack Amendment the initial carrier is chargeable for the neglect of any connecting carrier to forward the shipment within a reasonable time, and there is an express prohibition against any exemption from this obligation. In *Missouri, K. & T. R. Co.* v. *Harriman,* 227 U. S. 657, the Supreme Court observed that: "The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence." It is not necessary to determine in this case whether a stipulation that the carrier shall not be bound to convey and deliver in time for a particular market is an attempt to avoid liability for negligence and as such is to be regarded as invalid. The ground of the action stated in the declaration is the failure to carry with reasonable dispatch, and the loss of marketability is mentioned as the element of damage. It is shown that the plaintiff's strawberries were forwarded on a regular berry train which, in due course of transit, would have reached its destination in time to admit of the sale of the berries in the market for which they were intended. The question, therefore, is not whether the carrier was required, in the absence of a stipulation to that effect, to transport the goods by a particular train or to deliver them in time for a particular market, but whether due diligence was used to ensure the movement with reasonable dispatch of the train actually provided by the carrier for this shipment.

In *Balto. & Ohio R. Co.* v. *Whitehill, supra,* it was said: "The carrier being bound to deliver in reasonable time, there could be no better standard for determining what was reasonable time, than comparison of the ordinary time taken, with that actually taken on that occasion." There is no evidence offered by the defendant carrier to explain and excuse the delay which is shown to have occurred in the transportation. Conditions might be supposed under which the most

diligent action by the carrier might not secure delivery within a stipulated time. But in this case the proof tends to show that the duty to forward *with reasonable dispatch* has not been performed, and, under such circumstances as the present, the carrier cannot be exempted from liability merely because the consequence of the delay thus occurring was a loss of market value and not some other form of injury to the property. If the clause quoted from the bill of lading could be construed as inconsistent with such a liability, it would be clearly ineffectual.

A proposal was made in the trial below to prove that the bill of lading was filed with the Interstate Commerce Commission as required by law together with the published tariffs of the defendant, including regulations to the effect that if the shipper should elect not to have the property carried subject to all the terms and stipulations of the bill of lading, a rate would be chargeable ten per cent. in excess of that applying to carriage under its provisions. No such election was made by the plaintiff, and it is urged that his rights must therefore be governed by the contract into which he entered providing for the exemption of the carrier from liability for failure to deliver the shipment in time for a particular market. For the reasons already stated it is apparent that this contention cannot be sustained.

There is a provision in the bill of lading that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid), at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such compensation whether or not such loss or damage occurrs from negligence." Upon the assumption that under this provision of the contract of carriage the only measure of the plaintiff's

recovery would be the value of the berries at the place and time of shipment, and in the absence of any proof of such value, the defendant sought to have the jury instructed that there was no evidence of any real or actual damage suffered by the plaintiff for which the defendant is liable, and that, therefore, though the jury should find that the berries were not transported and delivered with reasonable dispatch, only nominal damages could be recovered. This instruction was refused.

It is well settled that if the shipper obtains a lower rate upon an agreed valuation of the property, he is estopped to enforce a claim for loss upon the basis of a higher value contrary to the express terms of the agreement. *Adams Express Co.* v. *Croninger, supra; Kansas City Southern R. Co.* v. *Carl,* 227 U. S. 639; *Missouri, K. & T. R. Co.* v. *Harriman, supra; Wells, Fargo & Co.* v. *Neiman-Marcus Co.,* 227 U. S. 469; *Wolff* v. *Adams Express Co.,* 106 Md. 472. In the case at bar the value of the berries as received for carriage is not specified in the bill of lading, but the provision is that the amount of loss or damage shall be computed on the basis of the value at the place and time of shipment. If the property had been injured or partially lost in transit, this case would have been analagous to those of *N. Y. & Balto. Transport Co.* v. *Baer,* 118 Md. 73, and *M. & M. Trans. Co.* v. *Eichberg,* 109 Md. 211, in which the granting of an instruction in conflict with such an agreement as the present in reference to the measure of damages was held to be reversible error. If the berries had been totally lost or destroyed, recovery would have been restricted to their value at the time and place of shipment. Unless the stipulation in the bill of lading is to be altogether disregarded, the carrier could not justly be charged with a greater loss to the property for delay in transit than would result from an absolute failure of delivery: The value of the berries as received for shipment would therefore seem to be a proper subject for inquiry in the determination of the carrier's liability. The ordinary measure of recovery would be the "decline in the market value

between the time when they could have been sold, if they had been transported with due dispatch, and the time when they were actually sold." *P., W. & B. R. Co.* v. *Lehman,* 56 Md. 209; *Baltimore & Ohio R. Co.* v. *Whitehill, supra.* But if the plaintiff obtained a lower rate in consideration of his agreement that his loss should be computed on the basis of the actual value of the commodity as delivered to the carrier, it would seem to be reasonable, and in accordance with the principles of law applied in the decisions to which we have referred, that the contractual limitation thus defined and supported should be observed. In order that the loss may be computed with reference to the value of the shipment as received by the carrier it is essential that evidence as to its value at that time and place should be produced. The purpose of such a computation in a case like the present would be to restrict the recoverable loss of market value within the shipping value with respect to which the carrier assumed responsibility.

But the instruction proposed by the defendant on this subject was erroneous because it embodied the theory that there was no evidence of any actual damage for which the defendant was liable. The measure of liability, as already indicated, was the loss of market value, and there was testimony as to the fact and extent of such loss. The offer of proof as to the original value of the berries would not have changed the basis of liability, but would simply have placed a limitation upon the amount of the recovery. The jury, therefore, could not properly have been instructed that there was no proof of damage which they were entitled to consider.

The first instruction granted at the plaintiff's request, however, disregarded the measure of recovery we have indicated, and there was error also in the refusal of the trial Court to allow the defendant to prove its published tariffs filed with the Interstate Commerce Commission containing the regulations already mentioned providing for a higher rate if the shipments were not made subject to the terms and limitations of the bill of lading. But it is reasonably certain, in view of

the jury's award, that there was no practical injury to the defendant from these rulings. The amount of the verdict was one hundred and eighty dollars and forty cents. It appears to have included an allowance of one hundred and fifty-three dollars and sixty cents for loss of market value at the rate of two cents per quart for seventy-six hundred and eighty quarts in the consignment, and twenty-six dollars and eighty-eight cents as interest. The proof is that the decline in value due to the delay was from two to three cents per quart. The average price per quart at which the berries were sold was about six and a half cents. It may be judicially assumed that their value at the time and place of shipment was at least equal to the two cents per quart which the jury allowed as damages, and in the view we have taken of the case no just purpose would be served in reversing the judgment and subjecting the parties to the expense of a new trial.

One of the defendant's rejected prayers proposed to submit to the jury the question whether the plaintiff's carload of berries was forwarded to its destination with reasonable dispatch. The evidence tended to show without contradiction that the transportation was not in fact made with the expedition customary in that service as conducted by the carriers. The issue as to whether the berries were delivered without delay was submitted to the jury by an instruction granted at the plaintiff's instance, and as there was no countervailing proof in the record on this subject to support the theory of the defendant's prayer, there was no error in its rejection.

There is no occasion for a discussion in further detail of the various exceptions in the record, as the questions they involve are answered by the conclusions we have stated as to the principles by which the case is controlled.

*Judgment affirmed, with costs.*