R. NELSON STEVENS, Trading as Stevens Brothers,

*vs.*

NORTHERN CENTRAL RAILWAY COMPANY,
a Body Corporate.

*Railroads: Perishable freight; duty as to—.*

Even without any special agreement to transport perishable freight in time for any particular market, it is the duty of railroads to use reasonable dispatch in their delivery to the consignee. p. 218

Whether such dispatch was used in a particular case is, in general, a question of fact for the jury, under proper instructions from the Court. p. 218

*Decided June 23rd, 1916.*

Appeal from the Court of Common Pleas of Baltimore City. (Stump, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Urner, Stockbridge and Constable, JJ.

*Warren A. Stewart* (with whom was *Hyland P. Stewart* on the brief), for the appellant.

*Shirley Carter* (with whom were *Bernard Carter & Sons* on the brief), for the appellee.

Briscoe, J., delivered the opinion of the Court.

The plaintiff is a commission merchant, engaged in the grain, fruit and produce business in the City of Baltimore.

The defendant is the Northern Central Railway Company, a body corporate, and a common carrier, and this suit is brought against the defendant to recover damages for the

alleged failure of the Railway Company to carry and deliver with reasonable dispatch, and for the delay in transporting certain perishable vegetables from Baltimore City to Cleveland, Ohio, shipped and consigned to the Bigelow Fruit Company, at the last named city.

The declaration contains one count, and avers in substance that on the 14th day of June, 1913, the plaintiff delivered at Baltimore, to the defendant three hundred and twenty-eight (328) baskets of wax beans, all in good condition for shipment to the plaintiff's agents and commission merchants, Bigelow Fruit Company, at Cleveland, Ohio, for sale; whereupon the defendant received the shipment for such transportation under proper refrigeration, and delivered to the plaintiff its receipt and bill of lading from Baltimore City, Maryland, to Cleveland, Ohio. The vegetables were loaded into a refrigerator car, under refrigeration, on said defendant's tracks at Baltimore, car initials P. R. R. No. 108786, and the defendant and its agents, servants and connecting carriers, instead of carefully attending to the refrigeration en route, and carefully and promptly handling the property, and with reasonable dispatch delivering the vegetables in the proper discharge of its duty, negligently and carelessly attended to the proper refrigeration and handling of same, and did not deliver the same in Cleveland, Ohio, to the plaintiff's agents with proper dispatch, or in good condition, the same not having been delivered until Monday afternoon at 4:30 o'clock P. M., of June 16th, 1913, when they should have been delivered there, according to the promises of the agent of the defendant, in the early morning of June 16th, 1913; and when delivered were in a greatly damaged and ruined condition arising from the delay and want of proper refrigeration and negligent handling of the same and the loss of markets they should have reached if they had been handled with reasonable dispatch, resulting in a great loss to the plaintiff.

There are thirty-seven exceptions in the Record relating to evidence and one to the action of the Court, in granting the

defendant's prayer at the close of the plaintiff's testimony, withdrawing the case from the consideration of the jury.

The proof shows that the defendant received from the plaintiff on the 14th of June, 1913, three hundred and twenty-eight baskets of wax beans to be shipped from Baltimore to Cleveland, Ohio, in accordance with the terms of a bill of lading, issued on that date. The shipment reached its destination in good condition, but from four to eight hours later than the usual time for arrival of the train, and in consequence of this delay, it is contended the plaintiff was unable to get the contents of the car on the market until early Tuesday morning, June 17th, when the beans sold for a less price than they would have sold for, if they had been forwarded with reasonable dispatch and had arrived in time for the market of June 16th.

By the bill of lading, it was agreed that every service to be performed hereunder shall be subject to all the conditions, whether printed or written herein contained (including conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns.

By the third condition of the bill of lading, it is provided, "Section 3: No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch, unless by specific agreement indorsed hereon. Every carrier shall have the right in case of physical necessity to forward said property by any railroad or route between the point of shipment and the point of destination; but if such diversion shall be from a rail to a water route the liability of the carrier shall be the same as though the entire carriage were by rail.

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classifica-

tion or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

While it is conceded there was no special agreement endorsed on the bill of lading that the carrier in this case was bound to transport the property in time for any particular market, yet it was its duty to carry the goods from Baltimore to Cleveland and there to deliver them to the consignee with reasonable dispatch.

In *P., B. & W. R. Co.* v. *Diffendal,* 109 Md. 509, it is said: "It became the implied duty of the defendant in accepting the carload of fruit for transportation to use due diligence to deliver the same at its destination within a reasonable time and for a breach of this duty resulting in loss to the plaintiff, the defendant was responsible in damages, whether the loss was occasioned by a fall in the market price, or by damage to the goods themselves, or by a combination of the two causes." *N. Y., P. & N. R. R.* v. *Prod. Exchange,* 122 Md. 222; *P., W. & B. R. R. Co.* v. *Lehman,* 56 Md. 209.

The principal question in the case, is whether the defendant exercised due care and diligence in delivering the carload of vegetables at its destination within a reasonable time and with reasonable dispatch, and this we are of opinion was a question that should have been submitted to the jury upon all the evidence in the case.

There was evidence that the train left Baltimore about 4 P. M. on June 14th and the car was delivered to the consignees in Cleveland on Monday, June 16th, at 4:30 P. M., about three or eight hours late, and this was too late for the early market of that day.

The plaintiff Stevens testified that he shipped the car of beans in question in car P. R. R. No. 108786, on June 14th, 1913, to the Bigelow Fruit Company, at Cleveland, Ohio, according to the bill of lading introduced in evidence and that the defendant runs a special perishable freight train

from Baltimore to different points including Cleveland; that he has had over twenty years' experience prior to this shipment, in shipping perishable freight over the Northern Central to Cleveland, and had shipped several hundred cars of produce, every year and season. That he knows the time other cars shipped on the same line from Baltimore arrived in Cleveland,—not this particular car, but witness had shipped cars of strawberries for instance, to day, and tomorrow had gone to Cleveland and got there ahead of these cars and saw them sold the following morning early, the second morning. These were shipments on this same perishable freight train; that is, other shipments made by the witness, not this one. And that he had seen this particular freight train leave Baltimore in the afternoon and arrive in Cleveland, the second morning after shipment, that the schedule time for leaving Baltimore was 4 P. M., that the value of the car of beans in Baltimore was $1.50 per basket, at his warehouse; the car of beans should have been delivered to the Bigelow Fruit Company early the following Monday morning, they had notified them of the shipment and they had engaged them for their trade at $2.35 per basket. In fact, they stated they would have sold from $2.35 to $2.50 per basket, had the car arrived on time, Monday morning, but as it did not reach them for delivery until 4:30 Monday afternoon, the trade was all over for the day, the beans had to be carried over and the entire car sold for gross $554.70, making a loss of $216.10, and it was for this amount the claim was made.

We think upon this state of proof in connection with the other evidence in the record, there was sufficient testimony to have taken the case to the jury, and the Court below was in error in granting the defendant's prayer.

It would answer no good purpose to state or discuss in detail in this opinion the numerous rulings upon evidence set out in thirty-seven separate bills of exceptions in the record.

Much of the excluded testimony was clearly admissible as tending to support the theory of the plaintiff's case, that

there was unreasonable delay in the transportation of the vegetables and that they were not delivered to the consignee with reasonable dispatch and that this failure or negligence resulted in damage or loss to the plaintiff.

There was error in sustaining objections to the questions propounded the plaintiff in the fourth, fifth, sixth, seventh, eighth, twelfth and thirteenth exceptions, and in refusing to permit the witness to answer them.

The questions were not only proper but the evidence relevant and material to the issue in the case.

In *Balto. & Ohio R. R.* v. *Whitehill,* 104 Md. 312, exceptions to this character of testimony were overruled and the evidence held to be admissible. The Court there said, the seventh and tenth exceptions were taken to the admission of evidence to show the ordinary time taken by the railroad to transport cattle from Boyds and Barnesville to Union Stock Yards. The carrier being bound to deliver in reasonable time, there could be no better standard for determining what was reasonable time, than comparison of the ordinary time taken, with that actually taken on that occasion and that no reasons need be adduced to sustain these rulings.

In *Alabama Great Southern Railroad* v. *McKenzie,* 139 Ga. 410, it is said, in an action for damages accruing for delay in transportation, it is a proper matter of inquiry as to the time ordinarily required for carriage between two points, the preparations made by the carrier, the effort at dispatch, the character of the freight and kindred circumstances.

In *Kemendo* v. *Fruit Dispatch Company* (Texas), 131 S. W. 73, the Court said: "In an action against a carrier for delay in shipping fruit, shippers of fruit between the points in question are properly allowed to testify to the usual time required to make the shipment to an intermediate point on the route, and as to their experience as to the time required for the whole shipment."

For the same reason, there was error in the rulings of the Court upon the sixteenth, twenty-eighth, twenty-ninth, thir-

tieth, thirty-first, thirty-fourth and half and thirty-fifth bills of exceptions.

The thirty-second, thirty-third, thirty-sixth and thirty-seventh exceptions are in reference to the market value of the beans at Cleveland, at the time the car should have arrived and at the time of their delivery after the market. This evidence was clearly admissible for the purpose of fixing the measure of damages, and there was error in these rulings. *Penn. R. R. Co.* v. *Orem Fruit Co.,* 111 Md. 362; *Balto. & Ohio R. R. Co.* v. *Whitehill,* 104 Md. 312; *N. Y. P. & N. R. R.* v. *Produce Exchange,* 122 Md. 222; *P. B. & W. R. R. Co.* v. *Lehman,* 56 Md. 209.

The nineteenth, twenty-third, twenty-fourth, twenty-fifth and twenty-sixth exceptions were taken to the refusal of the Court to admit certain letters, but the letters were subsequently admitted and these exceptions need not be considered.

The ninth, tenth and eleventh exceptions were taken to the refusal of the Court to permit certain schedules showing the usual time necessary for the trip from Baltimore to Cleveland to be offered in evidence. There was error on these rulings, as these schedules were admissible.

There was no error in the ruling on the thirty-fourth exception. If the account of sales of the car containing the beans (Exhibit 1), was the original account of sales it was admissible under the ruling in *Penn. R. Co.* v. *Orem Fruit Co.,* 111 Md. 362, but if it was simply a copy from the books or other records, it would be inadmissible. *Stallings* v. *Gottschalk,* 77 Md. 429; *Dick* v. *Biddle Bros.,* 105 Md. 308.

The rulings upon the remaining bills of exceptions fall within the general rules and principles announced in the discussion of the questions on the previous exceptions, and need not be further considered.

For the errors indicated, the judgment will be reversed, and a new trial awarded.

*Judgment reversed, new trial awarded, with costs to the appellant.*