## PENINSULA PRODUCE EXCHANGE *vs.* AMERICAN RAILWAY EXPRESS COMPANY.

*Demurrer to Declaration—Review of Order Sustaining—*
*Waiver—Filing of New Declaration—Carriers—*
*Perishable Freight—Expert Evidence.*

Where, after a demurrer to the declaration is sustained, a new declaration is filed, which, as containing the usual formal commencement and ending and being complete in itself, is evidently a substitute for the original declaration, although designated "amended declaration," the original declaration is to be regarded as withdrawn, so that the ruling on the demurrer is not open to review on appeal.                    pp. 433-435

In an action against a carrier for deterioration of a carload of fruit, the evidence showing that the time consumed in transportation was that ordinarily consumed between the two points in question, it was proper to instruct the jury that there could be no recovery under the counts in the declaration alleging a shrinkage in value by reason of defendant's failure to use reasonable diligence in forwarding the fruit.          pp. 435-437

In an action against a carrier for deterioration of a carload of fruit, *held* that the plaintiff's granted prayers correctly stated the law and properly defined the defendant's duty under the plaintiff's theory of the case.                    p. 438

In the absence of special contract, a carrier is not an insurer of perishable freight, but owes only the duty of exercising reasonable care and diligence to protect the freight from injury.                                         p. 439

The liability imposed on the carrier by the Carmack Amendment is the liability imposed by the common law, and may be limited or qualified by special contract, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to the carrier's negligence.                                      p. 440

A provision in the contract that, "unless caused in whole or in part by its own negligence or that of its agents, the com-

pany shall not be liable for loss, damage or delay caused by the nature of the property or defect or inherent vice therein," is a reasonable and legal limitation upon the carrier's liability, both under the common law and the Carmack Amendment.

p. 440

In an action against a carrier on account of the deterioration of a carload of strawberries, *held* that the evidence as to whether this was due to defendant's failure to keep the car properly iced, or to an inherent defect in the strawberries, being conflicting, the question was one for the jury.    p. 441

In an action against a carrier on account of the. deterioration of a carload of strawberries, *held* that error in excluding questions sought to be asked of plaintiff's employee, as to whether the berries were wet or dry when shipped, and as to their condition in every respect, was not cause for reversal, in view of his previous testimony as to their good condition when shipped.    ·    pp. 441, 442

In an action against a carrier on account of the deterioration of a carload of strawberries, it was proper to exclude a question as to the effect on the market value of berries of their arrival after the usual market hour, the contract not providing for their delivery in time for a special market, and there being no delay in their transportation.    pp. 442, 443

In an action against a carrier on account of the deterioration of a carload of strawberries, a question to a witness as to whether a shipment from the initial point did not sometimes arrive on an earlier train than that on which the shipment in question arrived, was properly excluded, the question at issue being the ordinary time of arrival of such shipments, and not whether they might occasionally arrive at an unusually early hour.    p. 443

The competency of an expert is a preliminary question resting in the discretion of the court, and its ruling thereon is not cause for reversal unless founded on some error in law, or on serious mistake or abuse of discretion.    p. 444

One who had had many years' experience in inspecting perishable products, including strawberries, *held* qualified to testify as an expert as to the physical construction of a strawberry, the conditions affecting its tissues, and the possible causes

of deterioration in the course of transportation in refrigerating cars.                                                    p. 445

Hypothetical questions asked of an expert witness as to the possible causes of deterioration of a shipment of strawberries in course of transportation, *held* proper.          pp. 446, 447

The opinion of an expert witness has probative force by reason of his unusual and expert knowledge of the subject, gained from study, experience, and observation.          p. 447

The weight to be given to answers by an expert witness to hypothetical questions properly asked him, is a question for the jury, with which the Court of Appeals has no concern.   p. 447

*Decided February 26th, 1925.*

Appeal from the Circuit Court for Wicomico County (BAILEY and DUER, JJ.).

Action by the Peninsula Produce Exchange against the American Railway Express Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The plaintiff's granted prayers were as follows:

*First.*—"The plaintiff prays the court to instruct the jury that if they shall believe from the evidence that the Peninsula Produce Exchange, the plaintiff in this case, delivered to the American Railway Express Company, Incorporated, the defendant in this case, at Queponco, Maryland, on the ninth day of June, 1920, a carload consisting of two hundred and thirty-two crates of strawberries, there being thirty-two quarts of strawberries in each of said crates, in good condition and contained in a refrigerator car containing a sufficient and adequate supply of ice for the proper refrigeration of said strawberries; that the defendant received said strawberries and agreed to carry the same to Carr Brothers Company at the City of Portland, State of Maine, and to keep the same fully iced to destination, and issued to the plaintiff the express receipt therefor offered in evidence; and shall further find that the said strawberries were by the

defendant delivered to said Carr Brothers Company at the City of Portland aforesaid in a damaged condition, then the jury are instructed that the presumption of law is that said strawberries were damaged while in the possession and care of the defendant, and their verdict must be for the plaintiff, unless the jury shall find that such damage was not caused either by the failure of the defendant to use all reasonable care, diligence, and exertion to maintain continuous and adequate refrigeration in said car, or by its failure to take all reasonable precautions to protect said strawberries from damage; and the burden is on the defendant to show that the damaged condition of said strawberries was not caused by the failure of the defendant to use all reasonable care, diligence, and exertion to maintain continuous and adequate refrigeration in said car, or by its failure to take all reasonable precaution to protect said strawberries from damage."

*Second.*—"The plaintiff prays the court to instruct the jury that if they shall believe from the evidence that the Peninsula Produce Exchange, the plaintiff in this case, delivered to the American Railway Express Company, Incorporated, the defendant in this case, at Queponco, Maryland, on the ninth day of June, 1920, a carload consisting of two hundred and thirty-two crates of strawberries, there being thirty-two quarts of strawberries in each of said crates, in good condition and contained in a refrigerator car containing a sufficient and adequate supply of ice for the proper refrigeration of said strawberries; that the defendant received said strawberries and agreed to carry the same to Carr Brothers Company at the City of Portland, State of Maine, and to keep the same fully iced to destination, and issued to the plaintiff the express receipt therefor offered in evidence; then if the jury shall so believe, they are instructed that it thereupon became the duty of the defendant to use all reasonable care, diligence, and exertion to carry and deliver the said strawberries to said Carr Brothers Company at Portland, aforesaid, in safety, to maintain continuous and adequate refrigeration of said car by keeping at

all times while in transit an adequate quantity of ice in the
bunkers thereof, and to care for and protect the said ship-
ment at all times while in transit, and if the jury shall fur-
ther find that the defendant did not use all reasonable care,
diligence, and exertion to carry and deliver said strawber-
ries as aforesaid in safety, to maintain continuous and ade-
quate refrigeration of said car by keeping at all times while
in transit an adequate quantity of ice in the bunkers there-
of, and to care for and protect the said shipment at all times
while in transit, according to its duty as above set forth, and
that by reason thereof the said strawberries decayed and
deteriorated in quality and were delivered to said Carr
Brothers Company, at the City of Portland, aforesaid, in
such damaged condition, and loss thereby resulted to the
plaintiff, then if the jury shall so find their verdict must be
for the plaintiff."

*Third.*—"The plaintiff prays the court to instruct the jury
that if they find for the plaintiff they shall allow the plain-
tiff a sum equal to the difference between the invoice price
or sum at which the said strawberries were by the plaintiff
sold to Carr Brothers Company, if they shall believe that
the same were sold by the plaintiff as aforesaid, and when
delivered to the defendant complied with all the conditions
of the sale thereof with regard to kind and quality, and such
sum as they shall find as received by said Carr Brothers
Company for said strawberries, after deducting from said
last named sum the express and icing charges paid, if any,
and they may, in their discretion allow interest upon such
damages as they shall find to be due to the plaintiff, if any."

The defendant's granted prayers were as follows:

*Fourth.*—"The jury are instructed that there is no legally
sufficient evidence in this case that the car of strawberries
mentioned in the evidence was negligently delayed in tran-
sit by the defendant, and the plaintiff is, therefore, not enti-
tled to recover under the first and third counts of its decla-
ration in this case.

*Twelfth.*—"The court instructs the jury that the defendant corporation, under its contract with the plaintiff, as shown by the bill of lading offered in evidence, did not guarantee or insure that the said strawberries of the plaintiff would reach their destination at Portland, Maine, in good condition, and was only bound to exercise reasonable care to protect the said strawberries from injury while they were in its custody, and if the jury shall find from the evidence that the defendant did exercise such reasonable care to protect the said strawberries from injury while they were in its custody in transportation, then their verdict must be for the defendant under the second count of the plaintiff's declaration."

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*James E. Ellegood* and *James M. Crockett,* with whom were *Ellegood, Freeny & Wailes* on the brief, for the appellant.

*F. W. C. Webb,* with whom were *Woodcock & Webb* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal is from a judgment for costs entered in the Circuit Court for Wicomico County on a verdict by the jury in favor of the appellee (defendant below).

The suit was instituted by the appellant (plaintiff), the Peninsula Produce Exchange, a corporation, against the appellee (defendant), the American Railway Express Company, Incorporated, to recover damages alleged to be occasioned by the negligence of the defendant in its failure to transport without delay and keep adequately iced during the period of transportation a carload of strawberries consigned to Carr Brothers, of Portland, Maine. The substantial facts, as disclosed by the record, are that some time in the early part of June, 1920, the appellant sold and

agreed to deliver to Carr Brothers, in Portland, Maine, a carload of strawberries containing 232 crates of 32 quarts each, at and for the price of $8.25 per crate, plus icing charges; that in compliance with the terms of said sale the appellant, on the afternoon of June 8th and the morning of June 9th, 1920, loaded into a refrigerator car of the appellee, No. P. R. R. 2793, at Queponco, Worcester County, Maryland, the quantity of strawberries so sold to Carr Brothers; that after the loading was completed the car was fully iced, the doors sealed, and started on its way to destination at 1 P. M. on June 9th; that at the time of the shipment the appellant took from the appellee the usual express receipt designated "uniform express receipt," which contained the date of shipment, destination, consignee, weight, value of cargo, and shipper, with instruction "keep fully iced to destination," "which the company agrees to carry upon the terms and conditions printed hereon to which the shipper agrees, and as evidence thereof accepts and signs this receipt"; that among the terms and conditions printed on the receipt there was the following, which is the only provision necessary to refer to for the purposes of a decision in this case:

"4.   Unless caused in whole or in part by its own negligence or that of its agents, the company shall not be liable for loss, damage, or delay caused by * * *

" * * * (b) The nature of property, or defect or inherent vice therein."

That car P. R. R. 2793 was a type of refrigerator car generally known as "R-7," its icing capacity being 10,500 pounds, having a bunker at each end holding about 5,250 pounds each, the openings to the bunkers being located on the top of the car and being closed by plugs, and it being through these openings or plugholes that ice is supplied to the bunkers. That the car in question was inspected by the witness Miller, an employee of the appellee whose duty it was to make such inspections; that the inspection of this car took place by the witness at the point of origin and

again some time between the time of its departure and its arrival at Harrington, Delaware; that as a result of said inspection the witness found the drips to the bunkers were open so as to allow the water from the melting ice to flow out, and the car iced to its full capacity. That it arrived at Springfield, Massachusetts, on June 10th at 5.30 P. M., where it was then examined and the ice bunkers found to be about three-fourths full, at which time 2,500 pounds additional ice was put in the bunkers; that after icing it was taken out of the yard at Springfield about 8 P. M. and attached to a train which left Springfield at 2.30 A. M. on June 11th. That it arrived at Portland, Maine, at 12.50 P. M., June 11th, 1920, and was there examined as to the condition of the bunkers immediately upon its arrival, and they were found to be two-thirds full of ice; that the interior of the car was found to be dry; that the drips were not inspected at that time, as the witness saw nothing wrong with the refrigeration of the car. That this car might have been re-iced at New Haven, but this was not done for the reason that the car while at New Haven was on a track where there were overhead live wires, and there was no opportunity to examine the ice bunkers from the roof of the car; that while at New Haven ice water was flowing from the drips, indicating that there was ice in the car. That according to appellee's witness the condition of the berries, upon arrival of the car at Portland, was shrunken and mouldy. That a member of the firm of Carr Brothers was present upon the arrival of the car in Portland; that on June 11, the day of the arrival, the following telegram was sent to the appellant:

"Portland, Maine, June 11, 1920.
"Peninsula Produce Exchange, Pocomoke City, Md.
    "Penn car two seven nine three arrived in Portland in terrible condition will sell it to the best of our ability we never saw a car in such a condition before completely covered with white mould we are wiring Sam Shallow to send us inspector to see condition of car.                                Carr Bros."

That on June 22nd, 1920, Carr Brothers, by Frank J. H. Carr, wrote the following letter to the appellant:

"Portland, Maine, June 22, 1920.
"Peninsula Produce Exchange,
    "Pocomoke City, Md.
"Gentlemen:

"We are enclosing our check for $1206.90 for 232 crt. of berries in Car P. R. R. No. 2793. We wired you at the time of the condition of the berries and what we would do with them. Your letter of the 19th allowing a discount of $100 we will not accept. We have no claim in the American Express Co. as the car arrived on time and the bunkers had sufficient supply of ice, but the berries were waterlogged and caked in the baskets. We took every order we had out of town and shipped them express at nine o'clock at night with the hope that they would arrive in fair condition and that the discounts would not be too severe. We are still getting our discounts; they are deducting from one-half to one-third of the bill which we are standing, but it has stopped our berry business until our natives arrive, as we do not relish making any further enemies than we now have with our trade, although we felt in this case that we would have to pass the stick along. We had about one hundred crates in this car that we couldn't get a bid on from the peddlers at $1.00 a crate. It was a chance of taking them to the dump until we finally had one Charles Blumenthal take them and get what he could for them. He returned us $20.00 for the lot. If you want a straight itemized account of every single sale I will forward it to you.

"Very truly yours,
"Carr Bros. Co.,
"Frank J. H. Carr."

The evidence further shows that this car, upon its arrival in Portland, was attached to train 87, which was due to arrive at 12.05 P. M. and which did arrive on June 11th at 12.50 P. M. That cars of perishable foodstuffs shipped

from the vicinity of Queponco were frequently consigned to Portland, Maine, and when the time of departure was in the afternoon of any day the usual and ordinary running time for this class of produce by express would cause them to be received in Portland on train. 87, which was due to arrive at 12.05 P. M. on the second day after their departure.

The original declaration filed in this case was demurred to, the demurrer sustained with leave to amend, and was amended by filing the declaration upon which the case was heard and decided. During the progress of the trial eleven exceptions were taken to the rulings of the court on the evidence, and the twelfth to the ruling on the prayers. The plaintiff offered three prayers, all of which were granted by the court; and the defendant offered eighteen, all of which were rejected except the fourth and twelfth, and the appellant's twelfth exception is directed to an alleged error of the court in granting the fourth and twelfth prayers of the defendant.

The first question raised by the appellant is as to the correctness of the court's ruling in sustaining the demurrer to the original declaration. The docket entries as set forth in the record show that on August 12th, 1922, the plaintiff filed its original declaration; that on August 14th the defendant demurred thereto, and on October 9th the demurrer was sustained with leave to file *narr.* by next rule day; December 4th, 1922, amended *narr.* filed. The appellant's contention is that the action of the lower court in sustaining the demurrer to the original *narr.* is open to review in this court, while the appellee denies the correctness of this contention. This question must be determined by ascertaining whether or not the second declaration, designated as "amended *narr.*," is a pleading *de novo* or is an additional count or counts to the original declaration. In the case of *Baltimore v. Maryland Pavement Co.*, 130 Md. 454, a demurrer to the declaration was sustained. Thereafter the plaintiff filed an amended declaration, which was designated in the record "amended declaration, additional count"; and we held in

that case that it was not an entirely new declaration, but simply an additional count to the original declaration; the Court, speaking through Judge Thomas, saying: "In the case at bar the amendment made by the plaintiff was filed as an 'additional count' to the original declaration. It was not filed in the place of, but as a part of and as an addition to the original *narr.* An amendment by the filing of an additional count cannot be treated as pleading *de novo,* for in order to be an *additional count* it must of necessity be a part of the previous pleading and must be given the same effect as if it had been incorporated in a declaration containing both counts." The Court distinguished that case from the case of *Ellinger v. Baltimore City,* 90 Md. 696, wherein it was said: "The amendment by way of the 'amended declaration' was pleading *de novo,* which withdraws from the case the pleadings for which the new pleading is substituted, according to repeated decisions of this Court. * * * From what is disclosed by the record the plaintiffs must be held to have abandoned their case as made by the original *narr.,* and to have waived their right of appeal, or rather not to have put themselves in a position to appeal from the adverse ruling of the court upon the demurrer thereto. They did not submit to judgment upon the demurrer, nor did they simply amend the original *narr.* as to the matter which the court had found obnoxious to the demurrer, nor did they attempt to incorporate new matter into the original pleading by way of adding additional counts thereto; but proceeded upon leave of the court which accompanied its ruling, here in question, to file an entirely new declaration complete in itself." In the case now under consideration it is abundantly evident that the amended declaration is complete in itself and is a substitute for the original declaration, to which the demurrer has been sustained; the practical difference between the two being that in the first declaration the entire cause of action was contained in one count, while in the second and substituted declaration there are three counts. There is nothing in the record to indicate, either from the designation given

the second declaration or the language used therein, that it was intended to be or was an amendment, by way of additional counts, to the original declaration. It contained the usual formal commencement and ending and was complete within itself. We therefore hold, under the authority of the case of *Ellinger v. Baltimore, supra,* that the second declaration was pleading *de novo* and had the effect of withdrawing the previous declaration, for which it was substituted, from further consideration in the case. Therefore the ruling of the lower court in sustaining the demurrer to the original declaration is not now open to review in this Court. See also 2 *Poe, Pl. & Pr.,* sec. 189; *Mitchell v. Williamson,* 9 Gill, 77; *Lake v. Thomas,* 84 Md. 622; *Medairy v. McAllister,* 97 Md. 490.

Considering now the twelfth exception, which requires a review of the rulings of the lower court on the prayers, we find that the plaintiff below (appellant here) offered three prayers, all of which were granted, and in addition thereto the fourth and twelfth prayers of the defendant were granted and the other sixteen of the defendant's prayers were either withdrawn or rejected; so that under this exception we are only called upon to consider the correctness of the court in its ruling upon the defendant's fourth and twelfth prayers, which were granted. The fourth prayer of the defendant was as follows: "The jury are instructed that there is no legally sufficient evidence in this case that the car of strawberries mentioned in the evidence was negligently delayed in transit by the defendant, and the plaintiff is therefore not entitled to recover under the first and third counts of its declaration in this case." The effect of the court's action on this prayer was to instruct the jury that there was no legally sufficient evidence of negligent delay on the part of the defendant causing damage to the plaintiff, and therefore the plaintiff could not recover under the allegations contained in the first and third counts of the declaration. The declaration, as before stated, contained three counts, the first and third alleging that damage resulted to the strawberries by reason of the defendant's failure to use

due and reasonable diligence in carrying forward the ship-
ment to its point of destination, and that by reason of the
defendant's negligence in that respect there was a large and
material shrinkage in the value of the strawberries by rea-
son of a substantial decline in their market value or price,
and by deterioration in the quality of the strawberries, which
resulted in substantial loss to the plaintiff.   The second
count alleged that the strawberries decayed and deteriorated
in quality by reason of the defendant's failure to provide
sufficient quantities of ice for the refrigeration of the car in
which they were transported, and that by reason of said
decay and deterioration in quality due to defendant's negli-
gence in not providing sufficient ice, there was a large and
material shrinkage in the value of the strawberries, from
which the plaintiff suffered great loss and damage.   The
contract, as represented by the express receipt, provided that
the car should be kept fully iced.

It was the duty of the defendant to transport the straw-
berries from Queponco, Maryland, to Portland, Maine, wtih
reasonable dispatch, and to protect them from deterioration
by keeping the car fully iced.   The evidence shows that the
usual and ordinary running time from the point of depar-
ture to the point of delivery was about forty-eight hours;
the evidence on that point being that if a car left Queponco
on Monday evening, in the usual and ordinary course it
would arrive at Portland, Maine, on Wednesday following
on train 87, due there at 12.05 P. M.   In the present case
the car containing the strawberries left Queponco at 1 P. M.
Wednesday, June 9th, 1920, and arrived at Portland, Maine,
the point of destination, at 12.50 P. M., Friday, June 11;
the time consumed in the transportation being approximately
forty-eight hours.   There is no dispute as to the time of
departure and arrival at destination; this being shown by
the plaintiff's witnesses as well as those of the defendant.
The witness Frank J. H. Carr, a member of the firm to whom
the strawberries were consigned, under date of June 22nd,
1920, writing to the plaintiff, stated: "We have no claim
in the American Express Company, as the car arrived on

time and the bunkers had sufficient supply of ice, but the berries were waterlogged and caked in the baskets." We have carefully examined the record for evidence of delay, and while there is testimony to the effect that the car containing the strawberries reached Springfield, an intermediate point between Queponco and Portland, at 5.30 P. M. on June 10th, where it was re-iced, and that after being re-iced, which was completed at 8 P. M., it did not leave Springfield until 2.30 A. M., June 11th; nevertheless, the testimony conclusively shows that the train leaving Springfield at 2.30 A. M. was the first one to which this car could have been attached after being re-iced, and there is a total lack of evidence to show that from 5.30 to 8 P. M. was an unusual or extraordinary length of time to be consumed in re-icing Taking the above in connection with the undisputed fact that the usual and ordinary running time for shipments of this character from Queponco to Portland is forty-eight hours, and that this car arrived at Portland within forty-eight hours after its departure from Queponco; or, as was said in *B. & O. R. R. Co. v. Whitehill,* 104 Md. 310: "the carrier being bound to deliver in a reasonable time, there could be no better standard for determining what was a reasonable time than a comparison of the ordinary time taken with that actually taken on that occasion"; we think the lower court was correct in its instruction to the jury that there was no evidence legally sufficient to show delay in transportation on the part of the defendant. In addition, it is a significant fact that the plaintiff did not request any instruction as to delay by the defendant in transportation, which it would almost certainly have done if there had been evidence which in the opinion of the plaintiff was sufficient to entitle it to such instruction.

The theory upon which the plaintiff relies is that the defendant had negligently failed to keep the car in which the strawberries were transported adequately iced, which the defendant was bound to do, both under the law and his contract as represented by the express receipt; that this neglect of duty on the part of the defendant was the cause of the

deterioration and damaged condition of the strawberries when received at the point of destination; that if the evidence shows that the strawberries were in good condition when put in the car at Queponco and were received in a decayed and damaged condition at Portland, the presumption is that such condition was caused by the negligence of the defendant in failing to supply adequate ice for refrigeration during the period of transportation. The defendant's theory, on the other hand, is that although the strawberries may have been in good condition at the time of loading at Queponco and in a damaged condition when received at Portland, this damaged condition was caused by the nature of the property or defect or inherent vice therein, and was not due to any negligence on its part or failure to perform the duty placed upon it to keep the car fully iced. The prayers of the plaintiff are not in the record, but by agreement, as stated in the brief, they are set out in the brief of the appellee; and a reading of these prayers will show that the theory of the plaintiff was fully and fairly submitted for the consideration of the jury. The plaintiff's first and second prayers, we think, correctly stated the law and defined the duty of the defendant under the plaintiff's theory of the case, and submitted the question at issue to the jury in as favorable a light as it was possible for the plaintiff to have. *Phila., B. & W. R. R. v. Diffendal,* 109 Md. 494; *Orem Fruit Co. v. N. C. Rwy. Co.,* 106 Md. 1; *New York, P. & N. R. R. v. Produce Exchange,* 122 Md. 229.

The defendant's twelfth prayer instructs the jury that the defendant, under its contract with the plaintiff, as shown by the bill of lading, did not guarantee or insure that the said strawberries of the plaintiff would reach their destination at Portland, Maine, in good condition, and was only bound to exercise reasonable care to protect them from injury while they were in its custody; and that if the jury found from the evidence that the defendant did exercise reasonable care to protect the said strawberries from injury while they were in its custody in transportation, then their verdict must be for the defendant under the second count

of the plaintiff's declaration.   In the *Diffendal* case, *supra,* this Court said: "The ordinary common law liability of a common carrier as to most commodities committed to its custody for transportation, is that of an insurer against all risks incident to the transportation, save such as result from the act of God or the public enemy, or the fault of the shipper, but with respect to perishable goods, which themselves contain the elements of destruction occasioning their own loss or deterioration, the carrier is not the insurer, but is required to exercise reasonable care and diligence to protect the goods from injury while in its custody as well as to deliver them with dispatch."   Quoting *Hutchinson on Carriers* secs. 652 and 334, and *Brennison v. Pa. R. R.,* 100 Minn. 102.   In the later case of *Pennsylvania R. R. v. Clark,* 118 Md. 518, the Court, speaking through Judge Stockbridge, says: "Whereas formerly and to some extent even yet the carrier was treated as an insurer of the property of the shipper, at the present day this rule has been relaxed when a delivery is made, especially as affecting perishable freight, and there is imposed upon the carrier, in the absence of special contract as to the time of delivery, only the duty of exercising ordinary or reasonable care and diligence under all circumstances of the case to protect the freight from injury."   In the case of *Balto. & O. R. R. Co. v. Deever,* 112 Md. at page 355, in discussing the question of whether a common carrier is an insurer, we quoted with approval 6 *Cyc.* 381, where it is said: ."Where the destruction of or injury to goods is due to their inherent nature or quality or defects therein, the carrier is not liable if his own negligence did not occasion or contribute to the injury."   And Judge Boyd in that case added: "And perhaps it may be stated as a general proposition that the carrier is not liable for loss happening from the operation of natural causes."   Other cases supporting this principle are *P., B. & W. R. R. v. Lehman,* 56 Md. 209, and *Shockley v. Pennsylvania R. R.,* 109 Md. 223.

The rule above set forth and supported by the authorities quoted applies in cases where there is no special contract

limiting or qualifying this principle of the common law. In the case at bar there is a special contract which is commonly called "uniform express receipt." From an examination of this document it will be seen that nowhere do its terms or conditions impose upon the defendant carrier the liability of an insurer of the articles received for transportation, but on the contrary it expressly provides: "Unless caused in whole or in part by its own negligence or that of its agents, the company shall not be liable for loss, damage or delay caused by the nature of the property or defect or inherent vice therein." In *New York, P. & N. R. R. v. Produce Exchange, supra,* we quoted with approval the language employed by Judge Lurton in *Missouri, K. & T. R. Co. v. Harriman,* 227 U. S. 657, when determining the liability imposed by the federal statute known as the Carmack Amendment. He said: "The liability imposed by the statute is the liability imposed by the common law upon a common carrier and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable and does not exempt from loss or responsibility due to negligence." It will thus be seen that the liability imposed by the statute, in the absence of a special contract to the contrary, is the liability imposed at common law, but such liability may be limited or qualified by special contract provided the limitation or qualification be just and reasonable and does not exempt from loss or responsibility due to the negligence of the carrier. In other words, no term or provision can be inserted and made legally enforceable in a special contract, such as in this case, unless the limitation or qualification sought to be imposed upon the liability of the carrier is just and reasonable and does not relieve the carrier from liability resulting from negligent acts of its agents or employees. Applying this test to the terms and provisions of the special contract in this case, we think that the provision setting forth that "unless caused in whole or in part by its own negligence or that of its agents, the company shall not be liable for loss, damage or delay caused by the nature of the property or defect or inherent vice therein."

is a reasonable and legal limitation upon the liability of the carrier and is permissible both under the common law and the Carmack Amendment, and we find that the lower court committed no error in granting the defendant's twelfth prayer. The law as defined by the plaintiff's prayers, all of which were granted, and the granted prayers of the defendant, put fairly before the jury the only real issue in the case, to wit, whether the damage to the strawberries proven to have taken place between the time of shipment from Queponco and their arrival at Portland, Maine, was due to the failure of the defendant to keep the car properly iced, as claimed by the plaintiff, or whether such damage was due to an inherent defect in the strawberries, as claimed by the defendant. The record contains evidence tending to prove both of these contentions, and it was the province of the jury to weigh this evidence, reconciling conflicts, balancing probabilities, and deciding which of these conflicting contentions was the correct one. If the lower court was correct in its ruling upon the admissibility of the evidence, the jury's finding of fact cannot be disturbed.

We will now proceed to examine the exceptions relating to the evidence. The first, second, third, fourth, and fifth exceptions, while not abandoned by the appellant, were not seriously urged at the argument or in the brief. The first and second of these exceptions were to questions propounded to the witness Mumford, who was the purchasing agent of the appellant and had purchased and loaded these berries on the car at Queponco. In the course of his examination in chief he had stated that the car contained 232 crates of strawberries, of 32 quarts each; that the berries were Klondyke and that the condition of the berries was good, and when asked, "What do you mean when you say the berries were in good condition?" he answered: "I mean they were solid"; that as to the size of the berries, they were from medium to large Klondyke. He was then asked: "Were they wet or dry? Please state to the jury as to what the condition of these berries was with regard to wetness or dryness?" The appellee objected to this question and the

court refused to permit it to be asked. We can see no sound reason why this question should not have been permitted, but in view of the previous testimony of the same witness to the effect that the berries were in good condition, were of the Klondyke variety, and were solid at the time they were put in the car, we do not think that the refusal to permit the question was reversible error. The witness further stated that Kondyke berries were desirable and good for shipping for a long distance; whereupon he was asked: "Mr. Mumford, state fully the condition of these berries covered by the bill of lading which has been offered in evidence, as to their condition when delivered to the express company, in every respect?" Upon objection by the defendant this question was not permitted to be answered, and this ruling constitutes the second bill of exception. What we have said in reference to the first exception applies to the second.

The third exception arises out of a question put by the plaintiff to Mr. Carr, of the consignee's firm, as follows: "Do you know anything about the purchase of a car of strawberries from the Peninsula Produce Exchange on or about June 9th, 1920?" which was answered: "I know we ordered a car of fancy Klondyke strawberries and we agreed to pay $8.25 for them." To this answer the defendant objected and the objection was sustained by the court. It will be noted that the objection to the answer was made and sustained, but no motion was made to strike out the answer, and later on the same witness testified without objection that the price agreed to be paid for the berries was $8.25 per crate; therefore no injury resulted to the plaintiff from the ruling of the court on this exception. The witness, testifying further for the plaintiff, stated that the usual market hours in Portland were from 6 A. M. to about 9.30 A. M., and he was then asked: "What is the effect upon the market value of berries that arrive after 9.30?" To which question objection was made by the defendant and the objection sustained. This question would have been material and proper if the contract of carriage had been to deliver the same in time for a special market, and there had been evi-

dence adduced of a delay in transportation resulting in their failure to be received in time for that market. For the reason given in our discussion in respect to the prayers, it will be seen that there was no delay in transportation, and therefore this question was immaterial and objection thereto was properly sustained. Furthermore, the same testimony sought to be elicited from this witness by this question was subsequently permitted to be given by the same witness without objection.

The fifth exception is to a question asked upon cross-examination of the defendant's witness Googins, who was an employee of the defendant, being clerk to the agent at the depot in Portland, Maine. This witness had testified as to the running time of trains carrying express cars from Queponco, the initial point, to Portland, the point of destination, and had stated that if the car left the initial point on Monday night it would arrive in Portland on train No. 87 about noon of Wednesday, the second day after departure from Queponco. He was then asked: "Don't you, as a matter of fact, ever get them in the morning on earlier train arriving 6.25 in Portland?" An objection to this question was sustained, and we think properly so, for the reason that the question should have been directed to the usual and ordinary running time of like cars carrying like produce between the same points. If framed in that manner it would have been relevant on the question of delay, but the fact that under some unusual and extraordinary happening a car might be received at Portland at an earlier hour than was usual, could have no legitimate bearing upon the question of delay, and if permitted could only serve to confuse and mislead the jury. *Stevens v. Northern Central Rwy. Co.,* 129 Md. 220, and cases there cited.

The remaining exceptions, the sixth to the eleventh, inclusive, relate to the qualifications and testimony of Dr. Binney as an expert witness. This witness testified that he lived in Philadelphia and was an inspector of perishable commodities, employed as eastern manager of the Moorhead Inspection Bureau; that the eastern territory included New York,

Jersey City, Philadelphia, Baltimore, and all territory on the Eastern Shore as far as Norfolk; that he had under his management about thirty-five men employed in inspection work; that he graduated at Kansas University, Horticultural, and took a post-graduate course at the University of Wisconsin; that he had had seven years' practical experience in the inspection of perishable products in the employ of the United States Government, and four years with the organization then employing him; that he had done inspection work of perishable products for the Pennsylvania, Balto., C. & A., Western Maryland, and Lehigh Valley Railroads, and some of the same type of work for the American Railway Express; that he had had experience in the inspection of strawberries, and had followed strawberries in the field, inspecting them from early springtime, the blooming time, straight through to shipment; had followed carloads of strawberries completely from shipping points to terminal points, and had had much general experience in this line.    He was then asked: "Dr. Binney, I would like for you to tell the court and jury, from your experience with strawberries in the field, the physical construction of a strawberry?"    Upon the plaintiff's objection to this question being overruled, an exception was noted, forming the sixth exception.    The witness then answered and continued his testimony.

The seventh, eighth, and ninth exceptions, like the sixth, relate to questions asked this witness as to his knowledge of strawberries, which questions were objected to on the ground that he had not qualified as an expert.    What is sufficient to qualify a witness as an expert must be left in large measure to the sound discretion of the trial court, and its action in deciding that a witness has or has not qualified as an expert is seldom a ground for reversal.    In *Baltimore, C. & A. Rwy. Co. v. Moon,* 118 Md. 392, the Court, speaking through Judge Pattison, quoted with approval the rule laid down in *Jones on Evidence,* sec. 369, as follows:    "The competence of the expert is a preliminary question resting in the discretion of the court, and unless founded on some error of law, or on serious mistake or abuse of discretion, this ruling

is not reversible." To the same effect is the case of *Mahan v. Adam,* 144 Md. at page 368. In the present case we think the lower court made no mistake in deciding that the witness Dr. Binney fully qualified as an expert; but if such. were not the case, its decision would not be reversible error.

Exceptions ten and eleven were to the allowance by the court of hypothetical questions propounded to the witness Dr. Binney and his answers thereto. We think they were properly admitted. The record discloses that this witness was present during the entire trial and had heard all of the evidence. He had qualified as an expert, and during his examination, conducted for the purpose of determining his qualification as such expert, among other things, had testified that the word "waterlogged" has a particular and special meaning among strawberry shippers, and in defining its meaning as understood by them, said: "It means the excessive moistening condition of the broken down tissues of the berries"; that he was familiar with the type of refrigerating car in which these berries were shipped, had had occasion to inspect and examine carloads of berries which he knew had been loaded in the car in good condition, but which, due to improper refrigeration during transit, arrived at destination in bad condition, and also had occasion to examine and inspect at destination carloads of strawberries which he knew to have been in a waterlogged condition when they were loaded and which arrived at destination in bad condition, but had proper refrigeration during transit. The witness was then asked: "Assuming, Dr. Binney, that the strawberries in this case were loaded in the car at Queponco, Maryland, on June 9th, 1920, and that the bunker capacity of the said car was 10,500 pounds, and that the bunkers in the car were iced to said capacity, and that the strawberries were in good condition when they were loaded in the car, and that the car arrived at Springfield, Mass., on June 10th, 1920, at about 5 o'clock in the afternoon, and that the bunkers were found to be three-fourths full of ice at that point, and that 2500 pounds of ice were added to the bunkers at that point, and that the bunkers were thereby

filled to capacity, and that the car arrived at Portland, Maine, at or about 12.50 P. M. on June 11th, 1920, and that the bunkers in said car were two-thirds full of ice at arrival, and that the car was inspected at Queponco, Md., Harrington, Del., Springfield, Mass., and Portland, Maine, and at all those places its refrigeration system was found to be working properly and in good condition,—in what condition, under that refrigeration, should they have arrived at Portland, Maine, on June 11, 1920?" His answer was: "They should have arrived there in good condition." The second hypothetical question being: "Assuming that the testimony in this case shows that this car of strawberries was loaded at Queponco, Maryland, on June 8th and 9th, 1920, and that the testimony discloses that the berries were in good condition when they left Queponco, and that the car containing same had an icing capacity of 10,500 pounds, and that the car was iced to capacity when it left Queponco, and that the car arrived at Springfield, Mass., at or about 5 P. M., June 10th, 1920, and that the bunkers were about three-fourths full of ice at that point, and that 2500 pounds of ice were added to the car at Springfield, Mass., and that the car arrived at Portland, Maine, at about 12.50 P. M. on June 11th, 1920, and that the bunkers were about two-thirds full of ice at that point, and that some of the berries, upon arrival at Portland, Maine, were in a waterlogged and moldy condition and caked in the baskets, what explanation can you give for that condition at destination?" His answer was: "They must have been unsound when shipped, in some form."

This Court in many instances has commented upon the inherent weakness of expert testimony, because of the fact that at best it is only an expression of opinion by the witness, and is in a measure usurping the function of the jury; yet in proper cases, when a witness has qualified by demonstrating to the court his peculiar knowledge of the question to be decided by the jury, and of which the average man would not have knowledge, this class of testimony has uniformly been allowed. The jury understands that the

expert's testimony is not as to a fact, but simply his opinion as to the probable result flowing from facts which the jury might determine have been proven in the case. The opinion of the expert witness has probative force by reason of his unusual and expert knowledge of the subject, gained from study, experience, and observation. The worth of such testimony is based upon the logical inference that, if the witness' experience and observation have demonstrated that certain circumstances under certain conditions did produce a certain result, like circumstances under like conditions in other cases would produce a similar result. Having decided that this witness properly qualified as an expert, and that the questions propounded to him were proper hypothetical questions, the weight to be given to his answers was a question for the jury, with which this Court has no concern. Under the granted instructions of the lower court the jury saw fit to give more weight to the testimony of the witnesses of the defendant, which sought to prove that the damage to the berries was occasioned by an inherent defect, than they did to the plaintiff's testimony, which sought to show that the damage was occasioned by the failure of the defendant to keep the car properly and adequately iced during the time of transportation. Discovering no reversible error in the rulings of the lower court, the judgment must be affirmed.

*Judgment affirmed, with costs.*