## JEWELER et ux. *v.* POTOMAC ELECTRIC POWER COMPANY

[No. 285, September Term, 1957.]

*Decided July 2, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Herbert M. Brune,* and *R. Edwin Brown,* with whom was *John E. Oxley* on the brief, for the appellants.

*Richard W. Emory,* with whom were *William J. McCarthy, James H. Pugh* and *Venable, Baetjer & Howard* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal from a judgment on a jury's inquisition in a condemnation case was argued with that in *Potomac Electric Power Company v. Birkett,* 217 Md. 476, recently decided, and presents different aspects of some of the points there

decided. Appellants in this case argue that the Potomac Electric Power Company (Pepco) did not establish proof of its right of eminent domain in Maryland, did not show proper corporate authority to institute the condemnation proceedings or to take a fee simple title to the land sought to be condemned, did not show approval of the Public Service Commission for the extension of its lines, as well as that the form of inquisition was improper and the trial court erred in deciding as a preliminary matter that Pepco was justified in taking a fee rather than an easement.

Pepco replies that its right to condemn land in Maryland was conceded and the requirement that it be shown was waived and that the other objections of appellants are captious and unsubstantial.

When we decided in the *Birkett* case that Pepco had the right of eminent domain in Maryland and that it was proper for the court to decide questions of law in condemnation cases in advance of trial, the heart was cut out of appellants' defense to Pepco's taking of their lands in this case. The verdict of the jury was substantially in excess of the highest estimate the experts put on the land taken, and appellants do not claim that the amount of the award was too low. Their quarrel is with the right to take the land at all, and, if the taking is inevitable, that a fee rather than an easement was condemned. Pepco's petition to condemn alleges that it was "authorized by law to acquire by purchase or condemnation property or rights necessary for use in connection with the transmitting or selling of electricity * * *." Appellants answered that they "neither admit nor deny" those allegations and called for "strict proof thereof." Pepco says that under Maryland Rule 372 b, appellants' failure to deny the right to condemn makes the averment of that right deemed "to be admitted." The landowners say that the rule applies only to equity and that condemnation proceedings are subject to the rules governing actions at law under Code, 1957, Art. 33A, Sec. 4. We find it unnecessary to decide the point. The failure to deny the right of condemnation is significant as indicating that appellants had no real doubt that Pepco had the power of eminent domain. More important, we find

the record to show that appellants did in fact waive proof of this right of Pepco. That such a waiver was not without the contemplation of the condemnation article at the time the case came to issue is shown by the provision of Sec. 3 of Art. 33A, as the section then read, that upon failure to make timely answer a defendant "shall be regarded as in default, so far as the right of condemnation is concerned."

In the case before us a pre-trial conference was held on June 4 and another on June 7. At the second conference, Judge Lawlor told counsel for appellants that her notes showed that he had stipulated at the June 4th meeting that Pepco had the right of eminent domain in Maryland. When the reply indicated that he thought he had not made this concession, Judge Lawlor told him several times that if she were mistaken, he would have an opportunity to make an issue of the point. The ensuing colloquy makes it clear that appellants' counsel did not question the fact that Pepco had the right of eminent domain but rather went to the point of whether it must prove the necessity of condemning the land in question and the necessity of taking a fee rather than an easement. The conference of June 7 was called to decide, or to arrange for decision of, the latter question. The record in the *Birkett* case shows that when Judge Anderson said that: "In the Jeweler case there is no question as to the right to condemn * * *", counsel for Pepco, in the presence, and with the acquiescence, of counsel for appellants in this case, replied: "No, your Honor, in the Jeweler case Mr. Brown said he did not question our power to condemn; he questioned the necessity but not the corporate power." (We may take notice of the record in other cases that have been before us. *Snodgrass v. Stubbs,* 192 Md. 287; *Fletcher v. Flournoy,* 198 Md. 53, 60-61.) Subsequently, in the *Birkett* case the landowners, by the same lawyer who represented appellants, amended their answers to deny specifically the corporation's right to condemn. We find confirmation of our conclusion that the point was waived in the present case in the failure of the landowners to so amend or otherwise to act on Judge Lawlor's invitation to put the matter in issue, if they so desired.

Appellants moved for a directed verdict at the close of Pepco's case and at the close of the whole case, in part on the ground that Pepco "has failed to show any compliance with any statute or law of the State of Maryland authorizing it to condemn * * *." Judge Lawlor denied the motions, we think properly, because Pepco's right of eminent domain in Maryland had been conceded and the necessity of proving it waived by appellants.

There is no substance to the landowners' contention that the agents of Pepco, who instituted and prosecuted the case against them, did not prove proper corporate authorization for so doing or the necessity of condemning their lands and of taking a fee rather than an easement. Pepco showed that its planning division makes studies of the necessity for expanding its system; that its decision was that the project here involved was necessary; that there was substantial support for this decision in testimony that much additional electric power would be needed in the years ahead for the utility and convenience of the public in Washington and surrounding areas; and that Pepco must provide that additional electricity; that after the details of a proposed expansion are worked out by the engineering department and the route of transmission and the lands needed are designated by the real estate department, the whole proposal "is submitted to the senior vice-president, who in turn submits it to the board of directors for final approval." The petition for condemnation was signed by the senior vice-president. In *Realty Improvement Co. v. Consol. Gas Electric Lt. & Power Co.*, 156 Md. 581, 586 the Court rejected arguments similar to those made by the appellants here, saying: "As to the third ground, a lack of authority from the condemning corporation itself to its officers who initiated the proceedings, assuming that the landowner can make an objection on that ground, the by-laws of the corporation, introduced in evidence, give sufficiently broad power for this to the president of the corporation, and the record contains a subsequent express ratification of this particular condemnation proceeding in a resolution of the executive committee of the corporation. And the whole project is clearly shown to have been one decided upon

and initiated by the corporation. There is no basis for a finding of lack of authorization of the company's agents and attorneys." We think the quoted language is applicable here, and, as in the case cited, Pepco subsequently introduced evidence of explicit ratification of what had been done in resolutions of its board of directors authorizing condemnation of the Jeweler property, in order to make it abundantly clear that its officials, in filing the petition, had acted in accordance with its procedures and with authority.

The argument that the appellee had not obtained permission from the Public Service Commission to construct the proposed transmission facilities for which appellants' land is needed, is not seriously pressed. The only statutory provision relied on is Code, 1957, Art. 78, Sec. 24 (a), providing that "Hereafter, no public service company shall exercise any franchise granted by law except to the extent authorized by the Commission." That this section has reference only to the exercise of a franchise, not previously exercised, to use the streets or roads of a political subdivision for its lines, is indicated by subsection (d) of Sec. 24, which says that no authority shall be granted under subsection (a) "unless the company * * * has received the required consent of the proper local authorities * * *", the reference presumably being to the local consents required by Code, 1957, Art. 23, Secs. 166 and 167. In any event, as was noted in the *Birkett* case, the Public Service Commission in 1953 authorized Pepco to exercise in Montgomery County all franchise rights it had obtained from the Great Falls Power Company, and those rights included that of eminent domain for the construction of transmission lines.

Appellants' attack on the inquisition has two thrusts. The first challenges the right and propriety of Pepco (a) condemning the fee title of the strip taken from the landowners while at the same time giving back, as a matter of grace, certain rights to the landowners, and (b) condemning the easement of cutting and trimming trees lying beyond the strip to be taken. The trial court clearly and explicitly instructed the jury that it was to allow the fee simple value of the land taken and the value of the easement of cutting and trimming

without taking into account, in appraising the damages, the fact that the appellants would be allowed certain uses of the land after the taking. The amount of the verdict leaves no doubt that the jury fully valued both takings. In any event, no objection was made to the charge on these points, and, under the rules, they are not open to consideration on appeal. The second attack is on the inquisition as not showing (1) that appellants' lands were being taken for public use, and (2) the purposes for which the land was being condemned. These objections were made for the first time some five months after the inquisition had been submitted to the jury and, like the alleged defects in the charge, cannot be considered on appeal, under Maryland Rules 560 b, 554 a, 554 d, and 554 e.

As the *Birkett* case decided, there was no error on the part of the trial court in deciding preliminarily, as a question of law, that Pepco had the right to take a fee rather than an easement. On the merits, the testimony leaves no doubt that Pepco showed the necessity for taking the fee so that this assignment of alleged error cannot help appellants.

The record reveals no prejudice to the landowners, and the judgment will be affirmed.

*Judgment affirmed, with costs.*