DUVALL, ET UX. *v.* POTOMAC ELECTRIC
POWER CO.

[No. 205, September Term, 1963.]

44

*Decided March 5, 1964.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Kenneth E. Pruden,* with whom was *George T. Burroughs* on the brief, for appellants.

*Richard W. Emory,* with whom were *Venable, Baetjer and Howard, Jerrold V. Powers, Sasscer, Clagett & Powers,* and *Cornelius Means* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The appellants, Peter W. Duvall and Esther D. Duvall, his wife, are the owners in fee of a large tract of land in Prince George's County. The appellee, Potomac Electric Power Company (Pepco or condemner), acquired a portion of the property by condemnation for the purpose of erecting electric transmission towers.

The property and rights acquired by Pepco consisted of approximately 24 acres contained within a 250 foot strip of land and the right of ingress and egress to and from the strip over the remaining land of the owners as well as the right to trim and cut any tree within 75 feet of the strip. The inquisition,

however, reserved to the landowners the right to use the strip for agricultural purposes so long as such use does not interfere with the use of it by the condemner and the right to cross the strip at any point as long as no vehicular crossing is established within 25 feet of a transmission tower.

The issue of necessity for the taking having been stipulated, the case was tried only on the issue of damages. The jury awarded $23,000 for the property and rights taken, but the landowners, being dissatisfied with the award, appealed. Six questions are presented on appeal. Five relate to the admissibility of challenged evidence. The sixth concerns the correctness of the jury instructions. The first and second contentions will be considered together, as will the fourth and fifth: the third and sixth will be considered separately.

### (i) and (ii)

These contentions relate to the testimony of Rowland L. Bortner, a registered civil engineer, who had been a buyer of sites for generating plants and substations and rights-of-ways for utility transmission lines for more than forty years and was then manager of the real estate department of Pepco. He testified as to the proposed use of the property taken and as to the rights the condemner would acquire under the inquisition. The landowners assert that the purpose of the testimony was to mitigate damages for the property and rights taken. Although it may have had that effect incidentally, the testimony was primarily designed to aid the jury in determining severance or resulting damages, if any, to the remainder of the tract. When part of a tract is taken, such testimony describing future use is expressly authorized by statute on the issue of severance or resulting damages. Code (1963 Cum. Supp.), Art. 33A, § 5(b), as amended by Chapter 52 of the Laws of 1963. The statute is a restatement of the law as it has existed for many years. See *Realty Improvement Co. v. Consolidated Gas, Electric Light & Power Co.,* 156 Md. 581, 144 Atl. 710 (1929). The testimony of the witness was not only relevant but was, in fact, essential to a determination of compensation for the property and rights taken. Such evidence of future use and occupation has always been admitted in condemnation cases. See,

for example, *Taylor v. Baltimore City*, 45 Md. 576 (1877); *Johnson v. Consolidated Gas, Electric Light & Power Co.*, 187 Md. 454, 50 A. 2d 918 (1947). See also *Jeweler v. Potomac Electric Power Co.*, 217 Md. 458, 144 A. 2d 66 (1958), and the annotation in 89 A.L.R. 879.

(iii)

Here the landowners contend that it was improper to admit the opinion of an expert witness (W. E. Beers) as to the non-detrimental effect of the construction of the transmission line on the land not taken. We do not agree. An expert witness (Dewey M. Freeman) testified on behalf of the landowners that the remaining property would be damaged by the taking of the rights of ingress and egress and to cut and trim trees. The witness Beers was called to refute the testimony of Freeman. Unlike Freeman, Beers supported his testimony, to the effect that there was no damage to the landowners by reason of the rights taken, by stating that he was familiar with similar Pepco takings in Montgomery and Prince George's counties. As a result of extensive investigations he had made of the effect, or more exactly, the lack of effect, such other takings had on properties likewise circumstanced, he found that the value of such other properties had not been affected. He had not relied on the general information he had obtained from others but had formed his opinion after a thorough analysis of all the facts he had acquired in the course of his investigation of the situation. The opinion he gave, based as it was on the unusual and expert knowledge of the subject he had gained from study, examination and observation of the facts, had probative force and was admissible as evidence. *Peninsula Produce Exchange v. American Railway Express Co.*, 147 Md. 424, 128 Atl. 403 (1925). See also *Baltimore City v. Himmel*, 135 Md. 65, 107 Atl. 522 (1919). Cf. *Hance v. State Roads Commission*, 221 Md. 164, 156 A. 2d 644 (1959); *Turner v. State Roads Commission*, 213 Md. 428, 132 A. 2d 455 (1957). That the jury had a right to evaluate the testimony of both experts in arriving at its verdict is indisputable.

### (iv) and (v)

By the remaining evidentiary questions, it is contended that the trial court erred in admitting the rebuttal testimony of the witness Bortner (and photographs taken under his supervision to substantiate his testimony) on the question of whether the transmission line would interfere with normal radio and television reception. There was no error in allowing the testimony. The landowners' witness Freeman testified that such interference would make a difference in the value of the land not taken should it be subdivided for homesites in the future. It was therefore proper for the trial court to allow the condemner to rebut such testimony. We also think that the witness Bortner, on the basis of his engineering background and forty years experience in that occupation, was qualified to testify that the only interference would be within the 250 foot strip. It was the function of the jury to decide whose opinion (if it gave any credence to either) it would accept. *Bergeman v. State Roads Commission,* 218 Md. 137, 146 A. 2d 48 (1958).

### (vi)

The last question presented concerns the correctness of the jury instructions and states numerous alleged errors. However, only one objection was properly made after the instructions were given and that concerned the use of the term "right-of-way." The court instructed the jury that if it should find that the property remaining to the landowners had been damaged by reason of the taking of a right-of-way "for the purpose of going in and out," then the amount of such damage should be included in the award to the landowners. The landowner insisted that he was entitled to an instruction which would indicate that the right-of-way to be taken was "over all of the remaining property." The inquisition, however, described the right taken as one "of ingress and egress from [the] strip at any and all times over the adjoining lands * * * [of the landlords] * * * using as far as practical existing roads." Whatever may have been the reason for wanting a different instruction than that given by the court, it seems clear, since the jury was informed that "the inquisition should be looked at thoroughly," that the instruction as given was not improper or

48

prejudicial to the landowners. The other so-called "objections" to the instructions were based on exceptions taken to the admissibility of evidence at the trial and, not having been restated as objections after the jury had been instructed, are not available on appeal as objections to such instructions. See Maryland Rules 554 d, e, 560 b, and *Jeweler v. Potomac Electric Power Co., supra,* at p. 466.

> *Judgment affirmed; appellants to pay the costs.*